**Sheila LEBOVITZ, Plaintiff,**

**v.**

**Willie J. MILLER, Defendant–Appellee, Cross–Appellant,**

**Appeal of Jerome H. TORSHEN and Jerome H. Torshen, Ltd., Appellants, Cross–Appellees.**

No. 88–1030, 88–1107.

United States Court of Appeals, Seventh Circuit.

Argued May 31, 1988.

Decided Sept. 6, 1988.

Jerome H. Torshen, Torshen, Schoenfield and Spreyer, Ltd., Chicago, Ill., for plaintiff.

Robert W. Queeney, McBride, Baker & Coles, Chicago, Ill., for defendant-appellee, cross-appellant.

Before BAUER, Chief Judge, CUMMINGS, and CUDAHY, Circuit Judges.

CUMMINGS, Circuit Judge.

The issues presented by this appeal and cross-appeal deal with (1) the district court's imposition of Rule 11 sanctions, *see* Fed.R.Civ.P. 11, against an attorney and his law firm for failing to undertake a

reasonable inquiry before filing a complaint and (2) the court's refusal to impose additional sanctions against the attorney and his firm for opposing and losing defendant Miller's motion to disqualify them as counsel. We reverse the judgment insofar as it imposes sanctions and affirm the judgment insofar as it declines to award additional sanctions.

## A. Background

### 1. Procedural History

This lawsuit involved the award of a food service concession from the City of Chicago for its building at 510 N. Peshtigo Court formerly occupied by the Kraft food company. Torshen (Attorney Jerome H. Torshen and his firm, Jerome H. Torshen, Ltd.), represented Sheila Lebovitz, whose bid for the contract ultimately lost, and filed a complaint on her behalf. The complaint named as defendants two city officials, Acting Purchasing Agent William R. Spicer and Deputy Purchasing Agent Charles Banks, and an individual, businessman Willie J. Miller, the only defendant involved in this appeal. Count I alleged a RICO claim, *see* Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, while Count II alleged an Illinois state law claim of tortious interference with legitimate business expectations. The complaint was dismissed after the defendants successfully moved to disqualify Torshen and Lebovitz was ultimately unable to retain new counsel.

Six months after the complaint was filed, Miller filed a motion for Rule 11 sanctions on the ground that the complaint against him was baseless. Magistrate Lefkow, to whom the case had been referred, recommended that Torshen and his firm not be sanctioned. Judge Plunkett disagreed, concluding Torshen had failed to conduct a reasonable pre-filing inquiry as to Miller's role, and Miller was therefore awarded $7,340 attorney's fees and $958 costs. App. 15.[1] Judge Plunkett agreed with the magistrate's recommendation that Torshen

---

1. App. herein refers to Torshen's Short Appendix and Supp.App. refers to Torshen's Supplemental Appendix.

not be sanctioned for opposing the motion seeking to disqualify him. Torshen appeals from the award of sanctions and Miller cross-appeals from the denial of further sanctions and also seeks attorney's fees and costs on appeal. Torshen requests sanctions for having to defend Miller's motion for sanctions.

## 2. Facts

The City of Chicago solicited bids for a food service concession in the Kraft building. Lebovitz alleged that after submitting a bid

> she had been given assurances by City officials that she would receive the subject contract. The assurances were intercepted, however, when authority for letting the contract was shifted from one department of the City to another. The new officials reopened the bids and plaintiff was again informed that her bid was the most qualified. Thereafter, however, the officials demanded that plaintiff form a joint venture with Miller. . . .

Supp.App. 1–2. Miller was one of three partners in Ann's & Company's Famous Pizza & Caterers ("Ann's") which had submitted a bid after the bids had been reopened. However, only Miller was to be part of the proposed joint venture with Lebovitz. Banks told Lebovitz, in Miller's presence, that she had to form a joint venture with Miller in order to get the contract. Miller also reiterated this to Lebovitz.

> [Lebovitz] accepted the ultimatum because of fear that she would lose the contract entirely. She worked out an arrangement with Miller. Then the officials demanded that [Lebovitz] withdraw her joint venture agreement from the City Council Committee where it was then pending and threatened that if she did not, "you'll get dirtied up."

Supp.App. 2. After Lebovitz refused to give up, the joint venture agreement was withdrawn by Spicer and Banks. Eventually the Kraft contract was awarded to a third party.

Lebovitz contacted Torshen during the bidding process. Among the things he dis-covered while attempting to learn the status of Lebovitz's bid was that, of the three partners in Ann's, Miller appeared to lack experience in the food service business. In addition, Ann's food license, obtained only one month before its bid was submitted, was issued to one of Miller's partners, not Miller. Moreover, the partnership's written partnership agreement, submitted with its bid, was dated one day after the bid was submitted.

## 3. Standard of Review

We recently discussed the standard appropriate for reviewing a district court's decision to deny or award sanctions under Rule 11, see generally Federal Deposit Insurance Corp. v. Tekfen Const. and Installation Co., 847 F.2d 440, 442–43 (7th Cir.1988), noting that this Circuit has applied "one of two mutually inconsistent two-pronged tests." Id. at 443. Although it is agreed that factual determinations underlying an award of sanctions are subject to review only for clear error, id., some cases hold that the legal determination that sanctions are proper is reviewable only for an abuse of discretion, see, e.g., In re Ronco, 838 F.2d 212, 217 (7th Cir.1988), while others hold that the legal determination that Rule 11 has been violated is reviewable de novo, see, e.g., Brown v. Federation of State Medical Boards, 830 F.2d 1429, 1434 (7th Cir.1987). Most recently, we reiterated that the decision on whether Rule 11 has been violated is a judgment call to which we apply a deferential standard of review. Tekfen, 847 F.2d at 443; Fred A. Smith Lumber Co. v. Edidin, 845 F.2d 750, 751 (7th Cir.1988). In any event, "although the definition of a frivolous legal position is itself a question of law, there will often be factual questions concerning the actual position the litigant took—questions on which the court of first instance has the leading role." In the Matter of Central Ice Cream Co., 836 F.2d 1068, 1072 (7th Cir.1987). As in Tekfen, we find it unnecessary to reconcile these differing standards. Even according deference to Judge Plunkett's conclusion, the award of sanctions was improper.

## B. The Appeal As To Sanctions Allowed Miller

The complaint alleged that Miller conspired with Spicer and Banks to deprive Lebovitz of the Kraft contract. As the magistrate and district court agreed, "The gist of Miller's motion [for sanctions] is that there is no evidence that Miller, who was not a city official, but only a fellow bidder, did anything wrongful and therefore the suit is wholly unfounded against him." Supp.App. 3; App. 5.

Under Rule 11, a lawyer signing a document certifies, among other things, that after reasonable inquiry, the document is well-grounded in fact.

> Rule 11 imposes an affirmative duty of reasonable investigation on an attorney signing any court paper. Whether the pre-filing investigation was reasonable depends on the circumstances of each case, *S.A. Auto Lube, Inc. v. Jiffy Lube International, Inc.,* 842 F.2d 946, 948 (7th Cir.1988), and the signer's investigation need not be carried to the point of certainty. *Nemmers v. United States,* 795 F.2d 628, 632 (7th Cir.1986).

*Fred A. Smith Lumber,* 845 F.2d at 751. The use of discovery to bring out essential facts is of course permitted under a system of notice pleading. *Nemmers,* 795 F.2d at 632. The amount of time available to investigate and the probability that more investigation would turn up important evidence dictate the amount of investigation required by the rule, which "does not require steps that are not cost-justified." *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1083 (7th Cir.1987), *certiorari dismissed,* — U.S. ——, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988).

Whether or not a reasonable inquiry has been made depends on several factors:

> Whether the signer of the documents had sufficient time for investigation; the extent to which the attorney had to rely on his or her client for the factual foundation underlying the pleading, motion, or other paper; whether the case was accepted from another attorney; the complexity of the facts and the attorney's ability to do a sufficient pre-filing investigation; and whether discovery would have been beneficial to the development of the underlying facts.

*Brown,* 830 F.2d at 1435. The conclusion that a reasonable inquiry has or has not been made thus involves both legal and factual determinations.

Because the merits of Lebovitz's complaint have never been tested and Miller's role has not been legally determined, this Court is at a slight disadvantage in assessing the overall reasonableness of Torshen's investigation. This is not a case where we can simply compare the facts as alleged in the complaint with the facts as they existed. *Compare, e.g., Medical Emergency Services, S.C. v. Foulke,* 844 F.2d 391 (7th Cir.1988) (attorney failed to reasonably investigate; allegation that some defendants were employees of plaintiff disproved by written contract specifying status as independent contractors). As a result, the factors outlined in *Brown* (amount of time available to investigate, source of information, ability to investigate, etc.) are not particularly helpful here.

Therefore, although the district court characterized the basis for the sanctions as Torshen's failure to undertake a reasonable inquiry before joining Miller in the suit, the sanctions really involve the reasonableness of inferring, from the facts Torshen learned during the course of his representation of Lebovitz, that Miller was party to Banks' and Spicer's scheme. Because the district court did not believe that the complaint's allegations were well-grounded in fact, it concluded that Torshen's investigation had been inadequate.[2]

---

2. Miller argues that the complaint was not "warranted by existing law," Fed.R.Civ.P. 11, because Lebovitz had no exclusive right to the Kraft contract under Illinois law. Miller has waived this argument by not making it in his objections to the magistrate's recommendation. *Lockert v. Faulkner,* 843 F.2d 1015 (7th Cir.1988). In his objections he argued that the state law count was not warranted by existing law because in Illinois malice, which is required to establish tortious interference with a prospective contractual relationship, cannot be shown where the act complained of is committed within a competitive relationship to advance the actor's own

The magistrate concluded that Torshen had "detail[ed] a variety of facts that might lead a reasonable [fact-finder] to believe that Miller was a participant ... rather than merely an innocent competitor for the same contract." Supp.App. 3. Specifically the magistrate pointed to the following information learned by Torshen: 1) Miller apparently had no prior experience in food service; 2) Miller was willing to abandon his own bid in order to obtain part of the contract; 3) Miller was present during, and apparently participated and acquiesced in, Banks' and Spicer's threat that Lebovitz would not be awarded the contract unless she agreed to a joint venture with Miller. The district court, however, believed that there was no evidence that Miller was "in cahoots" with Banks and Spicer, but it conceded that the evidence would allow a reasonable person to infer that "some sort of wrongdoing was afoot" in the Purchasing Department. Going even further, the court maintained, "All the evidence points to Miller being an innocent competitor being threatened by Banks and Spicer in the same manner as [Lebovitz]." The court stated that Torshen must "have some factual information linking Miller to the scheme before naming him in the suit."[3]

There can be little doubt that the sequence of events which unfolded during the bidding process would permit a reasonable inference that some wrongdoing was afoot. We disagree with the district court's assessment that there was no evidence which could lead to an inference that Miller was part of that wrongdoing.

The factors cited by the magistrate support such an inference. While it is doubtless true, as the district court pointed out, that everyone must have a "first" contract, the fact remains that Torshen had learned from his review of Ann's bid documents that only Miller, of Ann's three partners, appeared to have no experience in food service. That Miller actually had some food service experience is irrelevant in the absence of a finding that Torshen failed to investigate this question reasonably. Our review of the bid documents suggests that Miller's main experience was in business management, albeit management of Ann's, rather than direct experience in food service. Furthermore, Lebovitz told Torshen that during her negotiations with Miller she became concerned about his lack of knowledge of the food service business.

The magistrate also pointed to Miller's willingness to abandon his own bid in order to form a joint venture with Lebovitz as suggesting his involvement with a scheme by Spicer and Banks. The district court's suggestion that Lebovitz was similarly willing to abandon her own bid does not take into account all of the surrounding circumstances. As one of three partners in Ann's, Miller was moving from a one-third to one-half interest in the contract.[4] Indeed, since the city had told Lebovitz she would be awarded the contract, Miller went from nothing to a one-half interest. While it is true that under the joint venture, Lebovitz merely replaced her current business partner (Lebovitz only owned one-half of the delicatessen which bid on the Kraft building) with Miller, this overlooks the

interest. In addition, Miller argued that the extortion claim was not warranted by existing law, claiming that because the city could have recommended Miller's bid for political reasons, it could also insist upon a joint venture which included Miller for political reasons. This argument, though related to the argument raised on appeal, was also not raised below and is accordingly waived. *Id.* at 1018–19.

**3.** The court gave as some examples of factual information that might link Miller to the scheme: evidence of meetings between Miller and Spicer and Banks prior to proposing the joint venture to Lebovitz or evidence of a prior relationship among the defendants. We do not

read the court's order, as Torshen would have us do, as *requiring* such evidence in order to support any allegations of conspiracy. Rather, given the court's conclusion that the information Torshen possessed did not support the allegation that Miller was a co-conspirator, it was pointing to the type of information which would have persuaded it that the allegation was warranted in this case. Nothing in the order suggests that the court thought that the conspiracy allegation could not be based upon circumstantial evidence.

**4.** In fact the district court incorrectly referred to Miller being coerced into "abandoning his *solo* bid." App. 6 (emphasis added).

fact that her partner was her husband. Thus the advantages and disadvantages to Miller and Lebovitz plainly differed.

Finally, the magistrate pointed to Miller's presence during (and apparent participation and acquiescence in) Spicer's and Banks' threat that she would not receive the Kraft concession unless she agreed to a joint venture with Miller. The district court, based on its apparent misunderstanding of the gains and losses to Miller and Lebovitz, thought that Miller's acquiescence was consistent with his being coerced to form a joint venture with Lebovitz. That is a possible interpretation. Nonetheless, based on the information Torshen obtained regarding the structure of Ann's, combined with the fact that Lebovitz had been informed she would be awarded the contract, it was reasonable for him to infer that Miller was a participant with Spicer and Banks rather than an innocent, equally coerced competitor. In sum, the district court overlooked the fact that Miller, and Miller alone, appeared to be the sole beneficiary of Banks' and Spicer's insistence on the formation of a joint venture.[5] Therefore we disagree with the court's conclusion that "[t]here was no evidence to indicate that Miller was in cahoots with Banks and Spicer." App. 4.

■ The judgment of the district court imposing sanctions on Torshen cannot be sustained.[6]

**5.** The fact that neither Lebovitz nor Miller was ultimately awarded the contract does not detract from the fact that the scheme, albeit unsuccessfully, was designed to benefit Miller.

**6.** After Miller moved for sanctions against Torshen for naming him as a defendant, Torshen filed a cross-motion for sanctions under Rule 11 on the basis that Miller's motion was unwarranted. *Cf. Local 106 v. Homewood Memorial Gardens, Inc.,* 838 F.2d 958, 961 (7th Cir.1988) (unwarranted motion for Rule 11 sanctions is itself sanctionable). The magistrate recommended denying the cross-motion, finding that "although thinly based, the motion [of Miller for sanctions] cannot be said to be entirely without foundation, particularly because the parameters of Rule 11 are not yet well defined." Supp.App. 4. The district court, which granted Miller's motion for sanctions, obviously found that it did not merit sanctions against Miller.

## C. The Cross–Appeal As To Sanctions Denied Miller

■ After the complaint was filed, the defendants attempted to disqualify Torshen from acting as Lebovitz's attorney. Judge Plunkett granted the motion to disqualify on two grounds: 1) "[I]t appears likely that Miller thought Torshen was representing him with regard to some of the very acts which might prove central to this lawsuit." Miller's Br.App. 2 (order granting motion to disqualify); 2) "Torshen was so closely involved with incidents surrounding plaintiff's decision to form, and act of forming, a joint venture with defendant Miller that there is a dangerous likelihood that either plaintiff or defendants ought to call him as a witness." *Id.* In denying Miller's request for sanctions against Torshen for litigating the motion to disqualify, the district court stated that Miller's decision to pursue the motion to disqualify rather than attack the merits of the lawsuit was a "tactical" one, and the motion was "the sideshow" not "the main attraction." App. 13.

On appeal Miller argues that sanctions were warranted, pointing to the court's grounds for disqualifying Torshen. First, Miller points to the court's finding that it was likely Miller believed Torshen was representing him in the joint venture matter. Miller argues that the law of this Circuit mandated disqualification, *see Analytica v. NPD Research, Inc.,* 708 F.2d 1263, 1266

Torshen argues that Miller's Rule 11 motion was brought for the purpose of retaliation and harassment, pointing to the defendants' strategy of seeking to disqualify him and seeking sanctions against him after he had been disqualified and had turned Lebovitz's files over to other attorneys (who appeared only briefly for plaintiff). These factors do not necessarily point to an improper motive. The district court did grant the motion to disqualify. Moreover, Miller was able to persuade the district court of the legal and factual merit of his sanctions motion. Although we have disagreed with the district court, Miller's sanctions motion was not so thinly based as to warrant sanctions against him; the denial of Torshen's cross-motion for sanctions was proper. *Cf. Local 106,* 838 F.2d at 961 ("[appellant's] position is wrong, but not unwarranted"). Thus that part of the judgment is affirmed.

**908**

(7th Cir.1983); *Westinghouse Electric Corp. v. Kerr–McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir.1978), *certiorari denied,* 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978), and that therefore Torshen's litigation of the motion to disqualify warrants sanctions. We disagree.

In *Analytica,* we upheld a sanction against a law firm for litigating a motion to disqualify which we held lacked a colorable basis in law, 708 F.2d at 1269, being squarely controlled by our previous decisions in *Westinghouse v. Kerr–McGee,* and *Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d 221 (7th Cir.1978). The sanctioned law firm had run afoul of the principle prohibiting "a lawyer [from representing] an adversary of his former client if the subject matter of the two representations is 'substantially related.' " *Analytica,* 708 F.2d at 1266.

*Analytica* rejected the law firm's argument that defendant NPD, Inc. was not a former client, pointing to the facts that NPD (rather than the firm's current client, a former NPD employee and now adversary) paid the firm's bill for handling a stock transaction and was not represented by other counsel. No such evidence exists here. Miller, Torshen, and Lebovitz were deposed in connection with the motion to disqualify. There was testimony that Miller was told to use a separate lawyer, and that he did so. Moreover, Miller knew Lebovitz was paying Torshen and he never discussed retainers or billing with Torshen. Although Torshen prepared the articles of incorporation for and was to be the registered agent of the joint venture, Miller used attorney Violet Ricks to give him advice about the joint venture and to review documents on at least two occasions.[7]

Of course, it is not required that a formal attorney-client relationship exist; a "substantial relationship" between two representations exists if a "lawyer could have obtained confidential information in the first representation that would have been

relevant in the second." *Analytica,* 708 F.2d at 1266. But the factual issue here involved the nature of the "first representation." As we said in *Westinghouse,* the relationship "hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice." 580 F.2d at 1319 (footnote omitted) (quoting McCormick on Evidence (2d ed. 1972), § 88, p. 179). *Westinghouse* went on to note that "the deciding factor is what the prospective client thought when he made the disclosure, not what the lawyer thought." *Id.* at 1319 n. 14 (quoting R. Wise, Legal Ethics (1970) at 184). Here, the district court did not find that Torshen did represent Miller; it merely found that it was likely Miller thought Torshen was representing him in connection with the joint venture.

Our *Westinghouse* and *Analytica* decisions did not require Judge Plunkett to hold Torshen's litigation of Miller's motion to disqualify sanctionable. What Miller may have thought was learned only through litigating the motion to disqualify. In contesting the disqualification, Torshen had reason to believe that Miller did not think Torshen was representing him.

Second, Miller argues that sanctions ought to have been awarded because Torshen also litigated the motion to disqualify on the issue of whether he ought to be called as a witness. Miller contends that there was "no legal or factual defense to the motion to disqualify" because "it should have been obvious" that Torshen would have to be called as a witness "to establish plaintiff's claims." Miller cites *Sheldon Electric Co. v. Blackhawk Heating & Plumbing Co.*, 423 F.Supp. 486, 489 n. 5 (S.D.N.Y.1976), for the proposition that "disqualification is required if plaintiff ought to call her lawyer as a witness" because his testimony is "essential to the case," *General Mills Supply Co. v. SCA Services, Inc.*, 697 F.2d 704, 708 (6th Cir.

---

7. Miller's memorandum in support of his motion to disqualify states that Miller asked Rick's advice after receiving copies of the articles of incorporation, the joint venture agreement, and the Kraft contract. Rick's affidavit states that

she explained at most a few of the terms of the documents after Miller asked her to look at the joint venture agreement and "perhaps" the articles of incorporation, and did not believe Miller had retained her services.

1982), or he "has crucial information ... which must be developed." *Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equipment Corp.*, 546 F.2d 530, 538–39 n. 21 (3d Cir. 1976), *certiorari denied*, 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977). Miller does not point to specific aspects of Torshen's testimony which would mandate his disqualification, simply claiming Torshen would be the only witness for Lebovitz in "many, if not most of the key conversations or transactions with city officials." Our review of the various memoranda filed by Torshen in defending against the motion to disqualify reveals no violation of Rule 11. Torshen argued that there was no reason he or his firm ought to be called as a witness, because others could provide the necessary evidence. *See Ross v. Great Atlantic and Pacific Tea Co.*, 447 F.Supp. 406 (S.D.N.Y.1978) (substance of lawyers' testimony could be submitted through documents and testimony of other witnesses). He also maintained that if he or a member of his firm were called as a witness, their testimony would not be prejudicial to his client. *See Rice v. Baron*, 456 F.Supp. 1361 (S.D.N.Y.1978) ("prejudicial" under [American Bar Association's model disciplinary rule] DR 5–102(B) means adverse to factual assertions of client). The cases he cited support his legal argument.

Nothing in Judge Plunkett's ruling on the motion to disqualify suggests that Torshen's defense of the motion was sanctionable. The cautious wording of the court's order supports this conclusion (*e.g.*, Miller *thought* Torshen represented him, and there was a dangerous *likelihood* Torshen ought to be called as a witness). Indeed, permitting Torshen to raise legitimate objections to the motion is consistent with a concern raised by the dissent in *Analytica*, which pointed out the importance of ruling on a motion "only after a factual inquiry allowing for subsequent appellate review ... in the absence of a clear and unrebutted factual basis supporting disqualification." 708 F.2d at 1275 (Coffey, J., dissenting). The district judge certainly cannot be faulted for conducting a neces-

sary factual inquiry into the basis for the motion to disqualify.

Finally, Miller contends that the district court denied him sanctions only because the motion to disqualify was unrelated to the merits of the lawsuit. Read in context, the court's "sideshow" versus "main attraction" remark (App. 13) was made in response to Torshen's objection to Miller's total fee request as being excessive. The court merely referred to the "tactical" nature of Miller's decision to pursue the motion to disqualify in accepting Torshen's claim that the time and expenses incurred in litigating that motion were recoverable.

The judgment denying Miller's sanctions (including the cost of a related deposition) as to his motion to disqualify Torshen was warranted.

## D. Conclusion

The judgment in No. 88–1030 is reversed insofar as it granted Rule 11 sanctions against Torshen and affirmed insofar as it denied sanctions against Miller.[8] The judgment in No. 88–1107 denying additional sanctions to Miller concerning the motion to disqualify is affirmed. Since he has not prevailed, Miller's request for fees and costs for defending Torshen's appeal is denied.