**VISTA MANUFACTURING, INC., Plaintiff,**

v.

**TRAC-4, INC., et al., Defendants.**

No. S89-265.

United States District Court, N.D. Indiana, South Bend Division.

April 4, 1990.

er. The issues are not frivolous, and the reasons for the court's ruling may not be apparent on the face of the record; accordingly, the court enters this statement of reasons in support of its rulings. *See Local 232, Allied Industrial Workers of America v. Briggs & Stratton Corp.,* 837 F.2d 782, 788 (7th Cir.1988). For the reasons that follow, the court finds no Rule 11 violation.

## I. FACTS AND ISSUES

Vista Manufacturing, Inc.'s complaint against Trac–4, Inc., Thomas Cavanaugh, Kevin Yendes, and James Thatcher is in four counts. Count I alleges that the defendants (collectively referred to as "Trac–4" unless an individual is referred to specifically) infringed Vista's patent by selling strip lights covered by the patent. Count II alleges common law claims of unfair competition and misappropriation of trade secrets against Mr. Yendes and Mr. Thatcher, former Vista employees who became employed by Trac–4 and were the "tools" of the violations alleged in Count II. Count III is a state law claim under Indiana's Uniform Trade Secrets Act, IND. CODE 24–2–3–1 *et seq.,* based on the facts alleged in the first two counts. Count IV relates solely to Mr. Yendes and alleges violation of a non-compete agreement between Vista and Mr. Yendes. Trac–4 has not answered the complaint.

It is undisputed that on April 7, 1989, Vista's counsel, James D. Hall, sent a letter to Trac–4 asserting that Trac–4 was infringing upon Vista's patent and requesting Trac–4 to cease and desist. Vista filed its complaint in this suit on June 9, 1989.

It also appears to be undisputed that correspondence occurred between Vista's counsel and Trac–4's Chicago, Illinois counsel, Richard E. Alexander. On May 18, Mr. Hall wrote that he was finalizing Vista's complaint and, unless he received some assurance of the matter's satisfactory resolu-

James D. Hall, Thomas J. Dodd, Todd A. Dawson, South Bend, Ind., for plaintiff.

Charles J. Keck, Elkhart, Ind., for defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

■ Three weeks after the plaintiff commenced this action, the defendants moved for a stay of the proceedings to allow the filing of their motion under Rule 11. The case is now before the court on the Rule 11 motion, in which the sanctions sought include dismissal of the complaint.[1] The plaintiff maintains that the defendants filed their Rule 11 motion solely for purposes of delay, which itself would constitute a Rule 11 violation. Each side has lodged serious allegations against the oth-

---

1. At the hearing on the motion, counsel for the defendants argued, in response to the court's inquiry, that dismissal is among the sanctions available under Rule 11. The court's subsequent research supports that proposition. *Murray v. Dominick Corp. of Canada, Ltd.,* 117 F.R.D. 512 (S.D.N.Y.1987); *Urban Elec. Supply and Equipment Corp. v. New York Convention Center Development Corp.,* 105 F.R.D. 92 (E.D.N. Y.1985).

tion within a week or two, the complaint would be filed. On May 25, Mr. Alexander wrote that "we are proceeding to evaluate our client's position in this matter. We have examined the patent and we have also examined the accused devices, as well as the devices made by your client." Mr. Alexander reported that he had ordered, but had not received, a file history from the Patent Office and requested any available copy from Mr. Hall's files. The letter further stated, "We have also learned from our client that he believes that the lighting which is the subject matter of the patent, has been in commercial usage for more than one year prior to the filing of the Patent Application. We are presently evaluating this ..." The following day, Mr. Hall sent Mr. Alexander a copy of the patent's file history and stated that he would wait another ten days before filing suit with the hope that the matter could be resolved.

On June 6, 1989, Mr. Yendes (once a Vista employee, then a Trac–4 employee, and now a defendant in this suit) filed a state court declaratory judgment action against Vista on June 6, 1989, seeking a declaration of rights under the non-compete agreement that forms the basis of Count IV in this suit.

On June 15, six days after this suit was filed, Trac–4 filed a notice of deposition and caused a subpoena duces tecum to be issued to Vista pursuant to Rule 30(b)(6), Fed.R.Civ.P. On June 21 and 22, depositions were taken from Vista's designated representatives, James Tieszen, Wayne Hensley, and Dwayne Tieszen. Trac–4's motion to stay followed eight days later.

## II. LAW AND ARGUMENTS

Rule 11 provides that when a party or attorney signs a paper filed with the court, he or she certifies that:

(1) to the best of the signer's knowledge, information, and belief formed after reasonable inquiry, it

(a) is well grounded in fact and

(b) is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that

(2) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

*See generally Kapco Mfg. Co. v. C & O Enterprises, Inc.*, 886 F.2d 1485, 1491 (7th Cir.1989). A violation of any of these certifications mandates the imposition of sanctions. *Shrock v. Altru Nurses Registry*, 810 F.2d 658 (7th Cir.1987). Sanctions must be imposed with respect to complaints that violate Rule 11, *Medical Emergency Service Associates v. Foulke*, 844 F.2d 391, 398–400 (7th Cir.1988), and with respect to Rule 11 motions that themselves violate Rule 11. *Local 106 v. Homewood Memorial Gardens, Inc.*, 838 F.2d 958, 961 (7th Cir.1988). The analysis is an objective one. *Golden Eagle Distributing Corp. v. Burroughs*, 801 F.2d 1531 (9th Cir.1986); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 253 (2nd Cir.1985), *modified*, 821 F.2d 121 (2nd Cir.), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); *Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 205 (7th Cir.1985). In effect, Rule 11 imposes a negligence standard: an objective failure to use reasonable care. *Hays v. Sony Corp. of America*, 847 F.2d 412, 418 (7th Cir.1988).

Trac–4 contends that Vista violated each certification under Rule 11: Vista did not engage in reasonable inquiry into the facts with respect to Counts I, II, and III; Vista did not engage in reasonable inquiry into the law with respect to Counts II, III, and IV; and Vista filed its complaint for an improper purpose, specifically, to drive Trac–4 out of competition with Vista.

The law of Rule 11 places both sides of this dispute in a challenging position. From the plaintiff's perspective, Rule 11 was not intended to be a discovery device. *Chipanno v. Champion Int'l Corp.*, 702 F.2d 827, 831 (9th Cir.1983) (Rule 11 "is not to be used to require plaintiff to offer proof of his case through supplemented Rule 11 certificates before discovery and before trial"). A plaintiff should not be required to lay bare its case, or reveal its

work-product, simply because a Rule 11 motion is lodged against it. Yet as Trac–4 notes, when the filing of a complaint is alleged to be the violation, the test under Rule 11 is what the plaintiff knew when the complaint was filed, not what was learned later. A complaint filed in sheer ignorance of the facts violates Rule 11, notwithstanding that its allegations may later be learned to be completely true. A shot in the dark is a sanctionable event, even if it somehow hits the mark. Accordingly, what the plaintiff may have learned later in discovery is immaterial to whether there has been a Rule 11 violation (although it may be quite pertinent to the choice of sanctions), *United States v. Allen L. Wright Development Corp.*, 667 F.Supp. 1218 (N.D.Ill.1987), even if the later events confirm what was alleged, on insufficient inquiry, in the complaint. *But see Magnus Electronics v. Masco Corp. of Indiana*, 871 F.2d 626, 629 (7th Cir.), *cert. denied*, — U.S. ——, 110 S.Ct. 237, 107 L.Ed.2d 188 (1989) ("An attorney takes a frivolous position if he fails to make a reasonable inquiry into facts (which later prove false) …").

■ A plaintiff, then, may not demonstrate compliance with Rule 11 by showing that it was right. It must demonstrate compliance by showing that its pre-filing inquiry was reasonable; such a showing may be difficult to make without affording the defendant considerable discovery.

The challenge is almost as great from the defendant's standpoint. The defendant must move quickly or risk bearing its own costs. One who fails to point out to an adversary the obvious factual or legal errors undergirding the adversary's pleading may be held to have accrued unreasonable costs in litigating against the ill-researched pleading and be denied sanctions adequate to cover its costs. *Dubisky v. Owens*, 849 F.2d 1034 (7th Cir.1988); *United Food & Commercial Workers Union Local No. 115 v. Armour and Co.*, 106 F.R.D. 345 (N.D.Cal.1985). If such a party moves swiftly to seek sanctions, as with respect to

the filing of a complaint, however, the court may deem the record insufficient to resolve the issue. Too, the very motion for sanctions may be perceived as an attempt to delay or derail the proceedings and, thus, sanctionable in its own right.

## A. Patent Infringement: Pre–Filing Factual Inquiry

It is undisputed that neither Mr. Hall, nor anyone connected with Vista at the management level, saw the alleged infringing devices before the complaint was filed.[2] At argument on the Rule 11 motion, Trac–4 maintained that, except in the most unusual of circumstances, inspection of the allegedly infringing product is an absolute prerequisite to compliance with Rule 11 when filing a complaint alleging patent infringement. Mr. Hall stated that Vista personnel had learned of Trac–4 transactions, strongly suggesting Trac–4's marketing of, or intention to market, an infringing product.

■ The requirement of pre-filing factual inquiry is designed to prevent parties from suing first and learning later whether they have a case. *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1340–1341 (9th Cir.1987). Rule 11 does not require a party to have sufficient information, before filing a complaint, to survive a summary judgment motion, *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 124 (8th Cir. 1987), or to survive a motion to dismiss for failure to state a claim, *Beeman v. Fiester*, 852 F.2d 206, 211 (7th Cir.1988), or to prevail at trial. Rule 11 requires only that inquiry which is reasonable under the circumstances, and the circumstances vary from case to case. *Matter of Yagman*, 796 F.2d 1165, 1182 (9th Cir.1986), *cert. denied*, 484 U.S. 963, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987). Accordingly, the court is unwilling to recognize a general rule that Rule 11 requires an infringement plaintiff to examine the defendant's product in all instances.

To determine whether the attorney made a reasonable inquiry into the facts of a case, a district court should consider:

---

**2.** James Tieszen testified that Vista had been unable to obtain the Trac–4 product, but explained neither the efforts undertaken to obtain the product nor the reasons for that inability.

whether the signer of the documents had sufficient time for investigation; the extent to which the attorney had to rely on his or her client for the factual foundation underlying the pleadings, motion or other paper; whether the case was accepted from another attorney; the complexity of the facts and the attorney's ability to do a sufficient pre-filing investigation; and whether discovery would have been beneficial to the development of the underlying facts.

*Brown v. Federation of State Medical Boards of the United States,* 830 F.2d 1429, 1435 (7th Cir.1987). Of these factors[3], only two would excuse a investigation that otherwise might be deemed inadequate. First, although no statute of limitations loomed, *see Nemmers v. United States,* 795 F.2d 628, 632 (7th Cir.1986), time was of concern to Vista, because Trac–4 appeared to be actively marketing its product. Damage to Vista, as Vista saw it, already had begun and would continue to mount. Second, discovery would be helpful in determining the design and pricing of the Trac–4 product. It is, however, a rare case in which discovery would not be a beneficial investigative tool. The remaining factors listed by the *Brown* court are not such as to lower the standard by which Vista's factual investigation is to be judged: counsel need not have relied wholly upon his client's representations; the case was not referred from another attorney; and the case does not appear to be particularly complex as infringement cases go.

 While the issue is a close one, the court finds that Vista and its counsel satisfied its obligation of a pre-filing reasonable inquiry. Vista had documentary evidence which, to one familiar with the relevant market, suggested that Trac–4 was marketing or preparing to market an infringing product. Correspondence was begun with Trac–4 and its counsel, Mr. Alexander. That correspondence affords support to both sides. Mr. Alexander submitted an affidavit stating, in part:

> Several days before the Complaint was filed … I talked with [Mr. Hall]. At that time, I indicated to him that I thought he should investigate whether or not there were, indeed, any trade secrets or confidential information which had been protected as confidential and trade secrets before the filing of any lawsuits, and also that he should check into the patent infringement. I warned him that I thought it would be a serious breach of Rule 11 … to file a Complaint without doing any research or investigation in view of the fact that what my client was telling me was entirely different [than] what his client was apparently telling him.

While a prior Rule 11 warning may be pertinent in evaluating a subsequent motion, *Aetna Cas. & Sur. Co. v. Fernandez,* 830 F.2d 952 (8th Cir.1987), a warning that counsel should check into the patent infringement is at best vague; a patent infringement suit may fail either for want of showing of infringement or for invalidity of the patent in suit. Trac–4 was represented at the hearing solely by its Elkhart and South Bend counsel, who explained that Mr. Alexander was absent in an effort to avoid unreasonable expense. *See Dubisky v. Owens,* 849 F.2d 1034. Mr. Hall stated, without contradiction, that Mr. Alexander never disputed the matter of infringement, but only questioned the validity of the patent. Mr. Hall was aware that Vista's pat-

---

**3.** The Seventh Circuit has acknowledged the difficulty of applying the factors set forth in *Brown* when, as here, the Rule 11 motion precedes any other defense pleadings:

> Because the merits of Lebovitz's complaint have never been tested and Miller's role has not been legally determined, this Court is at a slight disadvantage in assessing the overall reasonableness of Torshen's investigation. This is not a case where we can simply compare the facts as alleged in the complaint with the facts as they existed…. As a result, the factors outlined in *Brown* (amount of time available to investigate, source of information, ability to investigate, etc.) are not particularly helpful here.

*Lebovitz v. Miller,* 856 F.2d 902, 905 (7th Cir. 1988). Nonetheless, for want of any other analytical framework, the court will employ the *Brown* factors as a starting point for the discussion.

ent recently had been found valid in other litigation.

When it filed its complaint, then, Vista knew that: (1) Trac–4 had begun to cut into its business through the marketing of a product which, while unseen by Vista, on the basis of documentary material, seemed, to infringe Vista's patent; (2) Trac–4's counsel apparently disputed only the validity of the patent, rather than the fact of infringement; and (3) reasonable grounds existed to believe Vista had a valid patent. Under these circumstances, while a pre-filing examination of the Trac–4 product no doubt would have been preferable, the court cannot say that Vista violated its obligation of reasonable pre-filing inquiry.

### B. Reasonable Inquiry: Trade Secrets

▇▇▇▇▇ The finding that inquiry was sufficient with respect to the complaint's patent infringement count does not end the analysis. If other portions of the complaint violated Rule 11, those portions may give rise to sanctions, *Melrose v. Shearson/American Express, Inc.*, 898 F.2d 1209 (7th Cir.1990); *Teamsters Local No. 579 v. B & M Transit, Inc.*, 882 F.2d 274, 280–281 (7th Cir.1989), although a single unmeritorious argument in an otherwise valid paper may not alone give rise to a Rule 11 violation. *F.D.I.C. v. Tekfen Constr. and Installation Co.*, 847 F.2d 440, 444 n. 4 (7th Cir.1988). If Vista had insufficient information concerning the trade secrets or non-compete claims, it could have filed its patent infringement count and later moved to amend following further investigation.

The trade secrets counts allege the following: Vista has built a representative network to market its products and has developed pricing and marketing strategies and an economical manufacturing process not made available to the public. Vista also has developed a list of vendors and suppliers for machines and component parts used in its manufacturing and sales. While employed at Vista, Mr. Yendes and Mr. Thatcher had access to all areas of Vista's production and sales, including information concerning customers, represent-

atives, pricing and manufacturing methods. Mr. Yendes and Mr. Thatcher have decided to terminate their relationship with Vista and go into competition after discussing the matter with Trac–4's president, Mr. Cavanaugh. The complaint further alleges:

31. On information and belief, Defendants using confidential information of Plaintiff have contacted a plurality of Plaintiff's sales people to ascertain if they would work for Defendant TRAC–4 as sales people.

32. On information and belief, Defendants are in the business of making and/or selling strip lighting products in Indiana and other states on a continuous and systematic basis in competition with Plaintiff.

33. On information and belief, Defendants have unlawfully appropriated and used Plaintiff's trade secrets and have otherwise unfairly competed with Plaintiff.

Based on these allegations, Vista claims relief for common law misappropriation of trade secrets and violation of Indiana's Trade Secrets Act.

Trac–4 makes several attacks on Vista's pre-filing inquiry concerning these allegations: Vista sales persons (including Mr. Yendes and Mr. Thatcher) were not required to sign confidentiality agreements; Vista did not designate or mark documents as confidential or secret, or verbally instruct sales personnel concerning confidentiality; Mr. Yendes and Mr. Thatcher had no access to Vista's pricing formulations; Vista had no knowledge of Trac–4's manufacturing, pricing or marketing processes and strategies before or after the arrival of the defecting Vista sales persons.

▇▇▇▇▇ Trac–4 also notes the frequency with which Vista pleaded facts "upon information and belief". The court cannot agree that this language has any impact on the analysis under Rule 11. The signer of a pleading generally may plead on information and belief; if the pre-filing inquiry was reasonable, the phrasing does not offend Rule 11. *US Sprint Communications Co. v. Kaczmarek*, 121 F.R.D. 414, 416 (D.Kan. 1988); *General Accident Ins. Co. v. Fideli-*

*ty & Deposit Co. of Maryland*, 598 F.Supp. 1223, 1231 (E.D.Pa.1984).

Vista's pre-filing inquiry produced an awareness of material facts that can most generously be described as sketchy. Vista has tendered no independent statement concerning its prefiling knowledge with respect to Counts II and III of the complaint; the only information in the record concerning Vista's pre-filing knowledge comes from the depositions of James and Dwayne Tieszen and Wayne Hensley. The Tieszens are Vista's principal officers, and Mr. Hensley manages Vista's Indiana operations.

James Tieszen stated in his deposition that he was aware Trac–4 was selling to Vista's old customers, but had not specifically asked its customers whether they had been buying from Trac–4 before Mr. Yendes and Mr. Thatcher left Vista. None of Vista's customer lists were known to be missing, although Mr. Tieszen did not know whether Mr. Yendes and Mr. Thatcher made copies of which Vista was unaware. Mr. Tieszen testified that of Mr. Yendes' 150 customers while at Vista, Mr. Yendes had contacted three since leaving Vista. With respect to the claim that the defendants had misappropriated vendor lists, Mr. Tieszen conceded that he did not know from whom Trac–4 was purchasing before Mr. Yendes and Mr. Thatcher left.

As to the contention of misappropriation of secret marketing strategies, Mr. Tieszen testified that Mr. Yendes and Mr. Thatcher would have information that Vista intended to enter a certain market, but he had no information that Trac–4 had gone into that market. He conceded that cost and profit information was not available to Mr. Yendes or Mr. Thatcher.

Dwayne Tieszen conceded that to determine whether Trac–4 has made any changes in its manufacturing process since Mr. Yendes and Mr. Thatcher arrived, he would have to look at Trac–4's product "before and after", and he had not done so.

Wayne Hensley testified that while nobody was directly told not to reveal secret information, it was "general knowledge" that Vista employees were not to go out and tell everybody what Vista was doing, particularly with regard to customer lists kept in confidential files. A sales representative's access to customer lists generally was limited to his or her geographic sales area. As far as Mr. Hensley knew, sales people do not sign confidentiality agreements, although most sign non-compete agreements. Mr. Thatcher never signed a non-compete agreement and was never instructed to keep anything in particular confidential.

Mr. Hensley testified that Mr. Yendes received customer lists for his area and had to return them every month. Mr. Hensley did not know whether Mr. Yendes returned all of them. Mr. Hensley conceded that he had no reason to believe Mr. Thatcher took or copied a customer list, or that Mr. Yendes or Mr. Thatcher took a vendor list from his desk. Mr. Yendes and Mr. Thatcher did, however, have specific knowledge of vendors from boxes of materials received at Vista. Mr. Hensley conceded that Vista does not try to get vendors to not tell others they are Vista's vendors and that he did not instruct Mr. Yendes or Mr. Thatcher to keep those vendors' identities confidential. Mr. Hensley could identify no vendors that Mr. Yendes or Mr. Thatcher had approached on behalf of Trac–4.

If Vista has a specific policy on price discounting, Mr. Hensley's deposition reveals no familiarity with it. Mr. Hensley conceded that he did not know what Trac–4's manufacturing process was before Mr. Yendes and Mr. Thatcher arrived or what it is now.

Mr. Hensley testified that Mr. Yendes had approached Vista customers. In none of the instances, however, was Mr. Hensley aware of whether Trac–4 had sold, or tried to sell, to that customer before Mr. Yendes or Mr. Thatcher joined Trac–4. Most of the customers he named were not, to the extent Mr. Hensley had checked, customers assigned to Mr. Yendes or Mr. Thatcher when they worked at Vista. Mr. Yendes had made price quotations to one or more of his former Vista customers, however.

Before leaving Vista, Mr. Thatcher told two Vista sales people they should talk to

Mr. Cavanaugh about going to work at Trac–4.

Mr. Hensley conceded that he knew of no trade secrets that Mr. Thatcher or Mr. Yendes misappropriated or were then using at Trac–4. Although Mr. Hensley believed they knew of Vista's trade secrets, he did not know if Trac–4 had changed its processes to conform with those secrets, which Vista never specifically designated as trade secrets. To Mr. Hensley, a trade secret is "something you don't want other people to know." Mr. Hensley stated that he was not contending Mr. Thatcher or Mr. Yendes stole vendor and supplier lists.

Mr. Hensley also testified that Mr. Thatcher told him on April 5, 1989 that Trac–4 was going to "go after" customers as to whom Vista had been unwilling to discount its prices as deeply as the customer wanted. Mr. Thatcher and Mr. Yendes knew Vista's "end prices". He testified that Mr. Yendes had approached five Vista customers—to one he quoted a price below Vista's; to another, he quoted the same price as Vista's. Information concerning pricing was kept in the front of customer files, and Mr. Hensley speculated that Mr. Thatcher and Mr. Yendes could have reviewed that information.

### 1. Reasonableness of Factual Inquiry

Against this backdrop, the court turns again to the factors set forth in *Brown v. Federation of State Medical Boards of the United States,* 830 F.2d 1429, 1435 (7th Cir.1987). In doing so, the court declines to consider the affidavits of Mr. Yendes, Mr. Cavanaugh, and Mr. Thatcher submitted by Trac–4 on the eve of the hearing on the Rule 11 motion. It may well be that the affidavits' accuracy ultimately will be proven, unrebutted, or undisputed, but the focus of Rule 11

> ... is ex ante (what should have been done before filing) rather than ex post (how things turned out). How much investigation is justified (i.e., "reasonable") in light of the costs depends on the circumstances of the case, and Rule 11 does not allow an award of sanctions just because things went poorly after an investigation that was adequate in light of what

was known (and how much time was available) before the paper was filed.

*Mars Steel Corp. v. Continental Bank, N.A.,* 880 F.2d 928, 932 (7th Cir.1989). For the same reason, the court declines to consider the deposition of Mr. Yendes, submitted by Vista.

*a. Time available for investigation.* Vista faced no impeding statute of limitations. While the threat of immediate loss of sales existed, the only available information seems to indicate that Trac–4 had underbid Vista but once, and the passage of time would erode the value of the defendants' knowledge of Vista's "end prices" concerning customers. Vista took more time to file its complaint, under less pressing financial circumstances, than did the sanctioned party in *S.A. Auto Lube, Inc. v. Jiffy Lube Int'l, Inc.,* 842 F.2d 946, 949 (7th Cir.1988). The press of time cannot be viewed as grounds for allowing a lesser inquiry into the facts.

*b. Need to rely on client.* The record suggests no inquiry beyond the representations by Vista's key personnel and a document or two produced by Mr. Hensley. "Blind reliance on the client is seldom a sufficient inquiry ..." *Southern Leasing Partners, Ltd. v. McMullan,* 801 F.2d 783, 788 (5th Cir.1986). Trac–4 does not, however, seem to argue that Vista's representations to Mr. Hall were factually incorrect, as far as they went, and offers no suggestion as to what further inquiry would have revealed or refuted. Here, Trac–4 pays a price—a price case law concerning the duty to mitigate may require it to pay—in the timing of its motion. In most cases in which reliance on the client has been deemed inadequate, the courts have been able to see, in retrospect, what a further inquiry would have disclosed. *See, e.g., Insurance Benefit Administrators, Inc. v. Martin,* 871 F.2d 1354, 1356–1359 (7th Cir. 1989); *Medical Emergency Service Associates v. Foulke,* 844 F.2d 391, 398–400 (7th Cir.1988). That Trac–4 has not done so renders the analysis more difficult. *See Lebovitz v. Miller,* 856 F.2d 902, 905 (7th Cir.1988).

Vista, however, has pointed to no reason why its customers could not have been questioned for further information, such as whether a customer had dealt with, or been approached by, Trac–4 before Mr. Yendes and Mr. Thatcher defected. Further, if further inquiry of Vista personnel was warranted, no reason exists for the failure to have done so.

c. *Referral from another attorney.* The matter was not forwarded from another attorney, and Mr. Hall did not replace another attorney in the litigation. *Cf. Brown v. National Board of Medical Examiners*, 800 F.2d 168, 172 (7th Cir.1986).

d. *Complexity; opportunity for further investigation.* The trade secrets aspects of the case appear to be factually more complex than the patent infringement issues. Whether the arrival at Trac–4 of Mr. Yendes and Mr. Thatcher, armed with confidential information from Vista, made subtle changes in Trac–4's marketing, pricing and manufacturing strategies is a complex issue, depending for its resolution on evaluation of subtle impact on the identity and nature of customers that Trac–4 called upon.

e. *Need for discovery.* Trac–4 makes much of Vista's pre-filing ignorance of Trac–4's earlier marketing, manufacturing and pricing practices, but offers little suggestion as to how Vista might have gained such knowledge other than through discovery. It seems apparent that discovery from Trac–4 itself provided the best, if not the only, hope for obtaining such information.

 As thin as Vista's pre-filing knowledge was, the court believes this final factor—the need for discovery—precludes a finding that Vista violated Rule 11 by inadequate pre-filing inquiry into the facts. The Seventh Circuit recently explained,

The particular facts that [plaintiff's counsel] unearthed during discovery are irrelevant to the reasonableness of his filing the complaint ... but the fact that he had to use discovery to learn them is relevant. If discovery is necessary to establish a claim, then it is not unreasonable to file a complaint so as to obtain the right to conduct that discovery. "Rule 11 does not bar the courthouse door to people who have some support for a complaint but who need discovery to prove their case." *Frantz v. United States Powerlifting Federation*, 836 F.2d 1063, 1068 (7th Cir.1987).

*Kraemer v. Grant County*, 892 F.2d 686, 690 (7th Cir.1990). When necessary evidence is in the opposing party's exclusive possession, counsel may file a complaint based on reasonable inferences from whatever evidence is available, notwithstanding Rule 11. *Lebovitz v. Miller*, 856 F.2d 902 (7th Cir.1988); *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 95 (3rd Cir.1988). "The amount of investigation required by Rule 11 depends on both the time available to investigate and on the probability that more investigation will turn up important evidence; the Rule does not require steps that are not cost-justified. Only a 'reasonable' inquiry is necessary." *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir.1987), *cert. dismissed*, 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988).

That a lesser pre-filing inquiry may suffice when discovery is essential does not mean that Rule 11 is without force in such circumstances. Although a complaint may be based on reasonable inquiry when filed, later events may reveal it is without merit and persistence in such a claim may give rise to a Rule 11 violation, *Flip Side Productions, Inc. v. Jam Productions, Ltd.*, 843 F.2d 1024, 1036 (7th Cir.), *cert. denied*, 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988), or to a violation of 28 U.S.C. § 1927, *Walter v. Fiorenzo*, 840 F.2d 427, 436 (7th Cir.1988).

Mr. Alexander's letter to Mr. Hall warned that filing of a complaint on trade secret grounds might run afoul of Rule 11. Such a warning is pertinent in deciding whether further investigation would have been reasonable, *see, e.g., Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 754 (7th Cir.1988), but is not dispositive. *See, e.g., Schaefer v. Transportation Media, Inc.*, 859 F.2d 1251, 1256 (7th Cir.1988). Mr. Alexander's letter suggested that his

client's version of the events differed from Vista's. Trac–4, however, has offered no authority for the proposition that a plaintiff must afford a defendant a pre-filing right to reply, and the court's research has disclosed no such authority.

Vista's pre-filing factual inquiry was reasonable, if only minimally so.

### 2. Reasonableness of Inquiry into the Law

Trac–4 also argues that Counts II and III were not well-grounded in law because none of the secrets allegedly misappropriate were branded "confidential" or "secret". Under Indiana's Trade Secrets Act, such markings are not necessary; the information simply must have been "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." IND. CODE 24–2–3–2. The depositions discussed above adequately set forth Vista's efforts to safeguard its marketing, pricing, customer, vendor and manufacturing efforts; the court cannot find that the signing of a complaint containing the allegations in Count III objectively violates the certification that, after reasonable inquiry, the signer believes the pleading is well-grounded in law.

Because neither party has attempted to articulate the legal standards that will govern the common law claim purportedly pleaded in Count II, the court deems it unnecessary to address the issue further. The Rule 11 sanction is a tool that must be used with utmost care and caution, *Stotler & Co. v. Able*, 870 F.2d 1158, 1167 (7th Cir.1989), and its exercise requires greater guidance than the parties have afforded the court with respect to Count II.

### C. The Non–Compete Claim

Trac–4 argues that because the non-compete clause giving rise to Count IV is not limited geographically, it is unenforceable under Indiana law. *See, e.g., Commercial Bankers Life Ins. Co. v. Smith*, 516 N.E.2d 110 (Ind.App.1987). Vista's sole response is the representation that in the parallel state proceedings, the trial court denied Mr. Yendes' summary judgment motion.

The court need not resolve whether the ruling of a state court forecloses further inquiry under Rule 11, although when the issue is one of reasonableness of inquiry into controlling state law, it might do so. It is difficult to conceive of a situation in which a party's view of state law could be deemed objectively unreasonable if it has been accepted by a court of that state. This court, however, is unaware of the state judge's reasoning; Vista only informed the court of his ruling. It is sufficient to note that Rule 11 requires the signer to certify his belief, formed after reasonable inquiry, that the paper is supported by law or a good faith argument for an extension of existing law. *See, e.g., Hamer v. Lake County*, 819 F.2d 1362, 1367 (7th Cir.1987), *cert. denied,* —— U.S. ——, 110 S.Ct. 146, 107 L.Ed.2d 104 (1989). To determine whether Count IV offends that provision is premature. While one must actually make the argument for extension of existing law under this prong, *In re Ronco, Inc.*, 838 F.2d 212, 219 n. 10 (7th Cir.1988), the time to make the argument in this case has yet to arrive.

> The complaint need not and should not contain citations or legal argument. To find out whether it was the opening shot in a campaign for some new legal principle, a court must examine what the lawyers later say about their work. Rule 11 creates difficulties by simultaneously requiring courts to penalize frivolous suits and protecting complaints that, although not supported by existing law, are bona fide efforts to change the law. The only way to find out whether a complaint is an effort to change the law is to examine with care the arguments counsel later adduce.

*Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d at 1082.

The time to make this determination has not yet come.

### D. Improper Purpose
### 1. The Complaint

 Even a colorable suit may offend the "improper purpose" prong of Rule 11. *In re TCI*, 769 F.2d 441, 445 (7th Cir.1985). This prong of the Rule addresses papers

filed to harass and looks objectively to the party's motive for filing the paper. *Kapco Mfg. Co. v. C & O Enterprises, Inc.*, 886 F.2d 1485, 1491 (7th Cir.1989); *Deere & Co. v. Deutsche Lufthansa Aktiengesellschaft*, 855 F.2d 385, 393 (7th Cir.1988); *Beeman v. Fiester*, 852 F.2d 206, 209 (7th Cir.1988); *but see Gaddy v. Abex Corp.*, 884 F.2d 312 (7th Cir.1989), and *Tabrizi v. Village of Glen Ellyn*, 883 F.2d 587, 592 (7th Cir. 1989) (employing subjective test).

Trac–4 grounds its "improper purpose" argument, however, upon its earlier arguments that Vista failed to undertake reasonable pre-filing inquiry into fact and law. It offers no further basis for its "improper purpose" argument, and the court, having rejected the earlier arguments, finds none.

### 2. The Rule 11 Motion

Vista has not specifically requested sanctions against Trac–4 for the filing of its Rule 11 motion. At the hearing on the motion, however, Vista argued that Trac–4's sole purpose in seeking a stay and moving for dismissal under Rule 11 was to continue infringing Vista's patent. Because the imposition of sanctions for a violation of Rule 11 is mandatory and the court may do so on its own motion, however, *see Hapaniewski v. City of Chicago Heights*, 883 F.2d 576, 580 (7th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1116, 107 L.Ed.2d 1023 (1990), the court must evaluate whether Trac–4's motion violated Rule 11.

In light of the closeness of Vista's complaint's compliance with Rule 11, the court finds no basis from which to infer, objectively or subjectively, any improper motivation or purpose behind Trac–4's motion. Rule 11 is designed to spare litigants the burden of contesting frivolous claims, *Kapco Mfg. Co. v. C & O Enterprises, Inc.*, 886 F.2d at 1491; *Foster v. Michelin Tire Corp.*, 108 F.R.D. 412, 415 (C.D.Ill.1985). A Rule 11 motion filed to spare the movant that burden can hardly be said to be possessed of an improper motive. Although the court disagrees with Trac–4's contention that the complaint violated Rule 11, the court cannot say that Trac–4 failed to inquire into the facts or law supporting its motion. Trac–4 did not violate Rule 11.

### III. CONCLUSION

This suit has gotten off to an inauspicious beginning, with Rule 11 motions being directed, expressly or impliedly, at every paper that has been filed to date. Today's ruling that Vista did not violate Rule 11 in filing its complaint suggests no ultimate holding on the merits. Substantially less is required of the complaint than is required of a response to a dispositive motion. But while the court ventures no prediction on the suit's ultimate outcome, the court assumes that counsel for each side will continue to recognize not only the boundaries established by Rule 11, but also those set forth by professionalism and common courtesy.

For the reasons set forth above, the court DENIES the defendants' motion to dismiss and for sanctions. The motion for stay is DENIED AS MOOT.

SO ORDERED.