**AUTOTECH CORPORATION, Plaintiff,**

v.

**NSD CORPORATION, Fluid–Scope, Inc., and J.M. Grimstad, Defendants.**

No. 88 C 3096.

United States District Court, N.D. Illinois, E.D.

April 21, 1989.

William T. Rifkin, Niro, Scavone, Haller, Niro & Rockey, Ltd., Chicago, Ill., for plaintiff.

Marc D. Janser, Pedersen & Houpt, Chicago, Ill., Kenneth J. Gumbiner, Richard E. Messick, Patten, Boggs & Blow, Greensboro, N.C., Harvey Kaye, Cohen & Burg, P.C., Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Four months after bringing this patent infringement action, the plaintiff, Autotech Corporation, voluntarily dismissed the suit, but its attorney now finds himself faced with the prospect of Rule 11 sanctions for failure to conduct a reasonable prefiling inquiry. For the following reasons, the court grants the defendants' Rule 11 motion.

## I. BACKGROUND

### A. Facts

On April 11, 1988, Autotech filed this complaint charging the defendants—NSD Corporation, Fluid–Scope, Inc., and J.M. Grimstad—with patent infringement. The complaint alleged that Autotech owned Patent No. 4,728,834 ('834 Patent), entitled "Compact Digital Resolver/Encoder Assembly with Flexible Circuit Board" and issued on March 1, 1988, and that NSD, a Japanese corporation, infringed this patent "in this District and elsewhere by making, using and selling, and by actively inducing others to use and sell" an NSD product known as a position sensor. Complaint at ¶ 7. This position sensor, sold under the trademark "ABSOCODER," allegedly embodied the "resolver" disclosed and claimed in the patent. With respect to Fluid–Scope and Grimstad, the complaint alleged that these defendants infringed the patent "in this District and elsewhere by using and selling, and by actively inducing others to use," NSD's ABSOCODER. *Id.* at ¶ 8. Apparently, Fluid–Scope and Grimstad were authorized by NSD to sell certain types of NSD position sensors. *See* Affidavit of Noboru Yamazaki at ¶ 2.

Many of these allegations, however, were unfounded. For example, Autotech's patent extends only to position sensors that have certain electronic components enclosed within the housing surrounding the position sensor.[1] *See* Affidavit of Harvey Kaye at ¶ 7. NSD'S ABSOCODER position sensor does not contain these built-in electronic components and, therefore, cannot infringe the patent. *See* Autotech's Memorandum in Opposition to Defendants' Motion for Sanctions at 2 [hereinafter Autotech Memo]; Kaye Affidavit at ¶ 8. Furthermore, although NSD manufactures a device known as a "BIC ABSOCODER" (or "Built In Converter" ABSOCODER), which

---

1. The defendants do not concede that the patent    is valid.

does have built-in electronics and therefore conceivably could infringe Autotech's patent,[2] Fluid–Scope and Grimstad are not authorized to sell that device or even to suggest that it is available through them; rather, the firms are authorized to sell only other types of position-sensing devices that are part of the general ABSOCODER line. Yamazaki Affidavit at ¶ 7. Accordingly, neither firm circulates any sales literature indicating that it sells the BIC ABSOCODER. *See* Affidavit of Stephen Drennen at ¶ 7; Affidavit of James C. Grimstad at ¶ 6. In fact, not only are Fluid–Scope and Grimstad not authorized to sell the BIC ABSOCODER, but up until the complaint was filed they never sold an ABSOCODER of any type, anywhere—much less in this district. *See* Drennen Affidavit at ¶ 4; Grimstad Affidavit at ¶ 4; Yamazaki Affidavit at ¶ 8. Instead, NSD manufactures the BIC ABSOCODER only in Japan, and its sole United States distributor is a company named Enprotech Corporation.[3]

Soon after the complaint was filed, the defendants informed counsel for Autotech that the allegations in the complaint were groundless. For example, on April 19, 1988—only eight days after receiving a copy of the complaint—Stephen Drennen, Electronics Product Manager for Fluid–Scope, wrote to counsel for Autotech and advised him that Fluid–Scope did not market the allegedly infringing device:

> [T]he subject case involves a product "NSD" Corporation manufactures and markets under the trade name *BIC* Abso-coder. *BIC* is an acronym meaning "Built In Converter".
>
> Fluid–Scope is not licensed to market this product, nor have we discussed the possibility of such agreement. We do, however[,] market some of *NSD*'s products, several of which bear the tradename "Absocoder". These products in no way infringe on Autotech Patent 4,728,834.

By virtue of this document we are hereby absolving ourselves from all responsibility and ensuing litigation regarding this case. We ask that you direct all future correspondence to *NSD.*

Drennen Affidavit, Exh. 1 (emphasis in original). Furthermore, on June 6 Fluid–Scope and Grimstad filed their answers and affirmative defenses and NSD filed a motion to dismiss for lack of personal jurisdiction. The parties also participated in the first pretrial conference, in which Kenneth J. Gumbiner, attorney for Fluid–Scope and Grimstad, advised counsel for Autotech that neither defendant sold the product in issue and then offered to demonstrate this to Autotech's counsel. *See* Affidavit of Marc D. Janser at ¶ 2. These oral admonitions later were confirmed in writing by letter from Mr. Gumbiner to one of Autotech's attorneys:

> This will confirm a portion of our discussion on June 6, 1988, related to the questions of both the initial naming of Fluid–Scope, Inc. and J.M. Grimstad as well as their continued involvement in this suit. We believe the initial filing was improper and, certainly, the continued prosecution is unwarr[a]nted. In particular, we believe the factual statements made in NSD Corporation's pleadings served on you today, as well as our timely offer to verify the fact that neither company sells the product of which we believe you complain, require an early dismissal by Autotech of its Complaint against these companies.

June 6, 1988, Letter of Kenneth J. Gumbiner to Stuart I. Graff. Mr. Gumbiner further warned that by electing to proceed with discovery, the plaintiff would "unnecessarily cause both of these defendants to incur legal fees," and he urged the plaintiff "to dismiss both Fluid–Scope and J.M.

---

**2.** NSD does not concede that the BIC ABSOCODER infringes on Autotech's claimed patent.

**3.** The defendants claim that Enprotech is NSD's sole distributor in the United States of the BIC ABSOCODER. The plaintiff, although not directly contesting that Enprotech is the sole distributor, apparently implies that Enprotech is

only one of several distributors. *See* Autotech Memo, *supra* p. 2, at 2 (infringing product "distributed in the United States through distributors *such as* Enprotech.") (emphasis added). This potential factual dispute, however, is irrelevant to the issues presented in the Rule 11 motion.

Grimstad from this suit before additional costs are incurred." *Id.*

Fluid–Scope and Grimstad then initiated limited discovery to determine the extent of Autotech's prefiling inquiry. On June 6 the defendants served Autotech with a brief set of interrogatories and an accompanying document request requiring that Autotech describe the type of inquiry it had made to support its claim that either Fluid–Scope or Grimstad sold the BIC ABSOCODER (including a request to identify every individual and produce each document that led Autotech to believe that either company sold the allegedly infringing device).

Also on June 6, Enprotech, NSD's United States distributor of BIC ABSOCODERs, filed an action in this district against Autotech, seeking a declaratory judgment that Autotech's patent was invalid and, therefore, that Enprotech was not guilty of infringement. (Autotech subsequently answered the complaint in this suit, now pending before Judge Moran, and counterclaimed for infringement of the patent). After the defendants informed Autotech that NSD had no contacts with Illinois and that Enprotech was the company selling the allegedly infringing devices, Autotech offered to dismiss NSD from this suit immediately and to dismiss Fluid–Scope and Grimstad as soon as it was "satisfied that they [were] not authorized to sell" the BIC ABSOCODER. June 13, 1988, Letter of Kenneth J. Gumbiner to William T. Rifkin at 2. This offer, however, was contingent upon NSD's cooperating with discovery in *Enprotech* (or agreeing to be a party to that action) and its assurance not to move to transfer the *Enprotech* action out of Chicago. *Id.* After NSD informed Autotech that it was "unlikely to agree to waive any rights it [had] with respect to discovery in Japan," *id.*, Autotech then modified its initial offer by making dismissal of NSD contingent only upon NSD's agreement to be bound by the results against Enprotech. *Id.* Autotech, however, did not respond to the defendants' discovery requests, which were due July 6. Janser Affidavit at ¶ 5.

On July 7, the day after Autotech's response to the interrogatories was due, an attorney for Fluid–Scope and Grimstad wrote a letter to counsel for Autotech, asking Autotech either to answer the discovery request or to participate in a pretrial conference pursuant to Local Rule 12(d) and explain why it was not responding to the request. *See id.* at ¶ 4; July 7, 1988, Letter of Marc D. Janser to William T. Rifkin. Autotech did not respond to these requests because it was waiting for the defendants to respond to its modified offer to dismiss the lawsuit.

On July 25 Autotech wrote a letter to the defendants stressing that the defendants' agreement was "needed immediately in view of the upcoming deadline for filing a response to NSD's motion to dismiss ... and for discovery related to that motion." July 25, 1988, Letter from William T. Rifkin to Kenneth J. Gumbiner. Later that same day counsel for the defendants wrote a letter to Autotech, reiterating that they had told Autotech "not to hold up any discovery or pleadings based on the possibility of [their] agreeing to anything" and that they expected to have an answer to Autotech's modified offer within one week. July 25, 1988, Letter of Kenneth J. Gumbiner to William T. Rifkin at 1. Defense counsel also repeated that neither Fluid–Scope nor Grimstad should have been sued and that "reasonable inquiry would have eliminated the possibility" of bringing suit against either defendant. *Id.* at 2.

On July 27, 1988, counsel for Fluid–Scope and Grimstad confronted one of Autotech's attorneys in this court building and inquired whether he would respond to the discovery requests; counsel for Autotech replied that he was " 'too busy' " to do so, that he was uncertain about the different types of ABSOCODERs, and that discovery would be necessary to "sort things out." Janser Affidavit at ¶¶ 7–8. Subsequent exchanges between counsel for both sides proved inconclusive, although in each case counsel for the defendants offered to confirm that neither defendant sold the BIC ABSOCODER. The parties, however, did agree to conduct a pretrial discovery conference pursuant to Rule 12(d) on August 18.

On August 15, the day Autotech was required to respond to NSD's motion to dismiss and three days before the scheduled Rule 12(d) conference, Autotech came into court and presented a motion for voluntary dismissal pursuant to Rule 41. In its motion, Autotech stated that it accepted the defendants' representations that neither Fluid–Scope nor Grimstad sold the BIC ABSOCODER and that NSD did not have any contacts with Illinois and, therefore, was not subject to this court's jurisdiction. Autotech's Motion to Dismiss Without Prejudice at 2–3 [hereinafter Rule 41 Motion]. Autotech also stated that it was dismissing this action because it was faced with the "increased burden of responding to defendants' discovery requests and motions" in this case and *Enprotech*. *Id.* at 2. This court granted Autotech's motion subject to the defendants' right to bring Rule 11 motions.

### B. Positions of the Parties

A few days after this court granted Autotech's motion for voluntary dismissal, Fluid–Scope and Grimstad filed this motion for Rule 11 sanctions.[4] The defendants contend that counsel for Autotech failed to conduct a reasonable prefiling inquiry to determine whether the facts alleged in the complaint were true.

Counsel for the plaintiff insists that he did conduct an appropriate prefiling inquiry and offers the sworn statement of Manny Sharma, President of Autotech, in support. Mr. Sharma stated that in September or October 1987, one of Autotech's distributors was bidding on a job in Illinois at the facilities of a potential customer. The distributor (whom Mr. Sharma did not want to identify for fear of reprisal or interference with his business relationships, *see* Declaration of Manny Sharma at ¶ 8 (filed Oct. 12, 1988)) saw a representative of a competitor who also was bidding on the same job attempting to sell position-sensing devices to the customer. *Id.* at ¶ 4. After the other representative left, the potential customer told Autotech's distributor that the representative was associated with Fluid–Scope, Inc. and was attempting to sell the customer NSD ABSOCODERs. The customer then gave the distributor the telephone number of Enprotech Corporation. *Id.*[5]

Autotech's distributor informed Mr. Sharma of the encounter and then called Enprotech to obtain more information on the ABSOCODER product line and to determine if there were any Chicago area distributors of the product line. *Id.* at ¶ 5. In response to this inquiry, Mr. Leroy B. Bowman, allegedly of Enprotech, sent the distributor a handwritten note that provided as follows:

There are two distributors in the Chicago area[:]

Fluid–Scope, Inc.
840 Fiene Dr.
Addison, Ill 60101
Steve Drennan [sic] 312–628–2350
JM Grimstad
4792 Colt Rd
Rockford, Ill 61109
Jack Equclaire 815–874–6666

Thanks for your interest and I hope to hear from you again.

/s/ Leroy B. Bowman

*Id.*, Exh. 1.[6] After receiving this letter, Mr. Sharma provided the information to Autotech's counsel, who thereafter filed this suit.

This investigation, according to counsel for Autotech, constituted a sufficient prefiling inquiry under Rule 11. Autotech contends that because Bowman's letter did not state that Fluid–Scope and Grimstad sold only certain kinds of ABSOCODERs, or that neither company was authorized to sell the BIC ABSOCODER, or that neither company had sold any ABSOCODER in Illinois, counsel for Autotech was entitled to draw an inference to the contrary. The

---

4. NSD has chosen not to file a Rule 11 motion.

5. It is unclear why the customer gave the distributor Enprotech's telephone number when it identified Fluid–Scope as the competitor that allegedly attempted to sell the ABSOCODERs.

6. Mr. Sharma removed from this letter the name of the distributor.

defendants, on the other hand, contend that Autotech could not rely solely on the limited telephone inquiry from Autotech's unnamed distributor to Enprotech but instead had to conduct an independent investigation, especially when the Bowman letter contained the names and phone numbers of the alleged distributors of the infringing product (Fluid–Scope and Grimstad) and when a simple phone call would have revealed that they sold not the infringing device (the BIC ABSOCODER), but rather a different position-sensing device in the general ABSOCODER product line.[7] Counsel for Autotech, the defendants note, never made such an inquiry and, therefore, violated Rule 11 when it filed the complaint without conducting an adequate prefiling investigation.

The defendants also contend that counsel for Autotech compounded this alleged Rule 11 violation by refusing to dismiss the suit even after it learned that Fluid–Scope and Grimstad did not sell BIC ABSOCODERs and that NSD had no contacts with Illinois. Autotech concedes that from June 13, 1988, defense counsel "repeatedly represented" that neither Fluid–Scope nor Grimstad sold BIC ABSOCODERs and that this court had no personal jurisdiction over NSD. Rule 41 Motion, *supra* p. 8, at 2. Autotech contends, however, that its refusal to dismiss the suit immediately was justified because it had been waiting for a response from the defendants on Autotech's conditional offer to dismiss:

> On one hand, the parties were constantly trying to resolve the matter, with no response from defendants' counsel. On the other hand, defendants' counsel constantly refused to defer discovery and briefing which would be a needless waste to the parties and Court in light of the anticipated agreement.
>
> Thus, in the face of the increased burden of responding to defendants' dis-

covery and motions in both cases, and on the basis of counsel's representations that the real party in interest is Enprotech and that Fluid–Scope and Grimstad do not make, use or sell the allegedly infringing equipment, Autotech dismissed this action without prejudice in favor of the *Enprotech v. Autotech* action.

Autotech Memo, *supra* p. 2, at 4–5.

## II. ANALYSIS

Federal Rule of Civil Procedure 11 provides that an attorney must sign every pleading, motion, or other court paper and certify that "to the best of [his] knowledge, information, and belief formed after reasonable inquiry," the pleading is "well grounded in fact and ... warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." If the pleading or motion was signed in violation of Rule 11, then a court must impose upon the attorney "an appropriate sanction, which may include an order to pay to the other party ... the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee."

■ Rule 11 requires, among other things, that an attorney conduct a reasonable, independent investigation into the facts of the case before filing a complaint. *Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 751 (7th Cir.1988); *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir.1987), *cert. dismissed,* —— U.S. ——, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988); Fed.R.Civ.P. 11 advisory committee note. The amount of investigation required depends upon the time available to

---

7. In their reply the defendants note that Mr. Bowman was not an Enprotech employee, but rather an applications engineer with NSD of America (NSD's American subsidiary). *See* Affidavit of Leroy B. Bowman at ¶ 1. Furthermore, the defendants note, among Mr. Bowman's responsibilities is to respond to inquiries about ABSOCODERs. If, however, a customer inquires about BIC ABSOCODERs, Mr. Bowman will refer him to Enprotech. *See id.* at ¶¶ 4, 6, 8. Although Mr. Bowman avers that the letter appears to be in his handwriting, he asserts that he has no recollection of writing it; furthermore, he asserts, he never would have written the letter in response to an inquiry about *BIC* ABSOCODERs. *Id.* at ¶¶ 8–9.

investigate and the probability that more investigation will turn up important evidence. *Szabo*, 823 F.2d at 1083. Although the determination whether a prefiling inquiry is reasonable is inherently fact-bound, the Seventh Circuit has articulated several relevant factors:

whether the signer of the documents had sufficient time for investigation; the extent to which the attorney had to rely on his or her client for the factual foundation underlying the pleading, motion, or other paper; whether the case was accepted from another attorney; the complexity of the facts and the attorney's ability to do a sufficient pre-filing investigation; and whether discovery would have been beneficial to the development of the underlying facts.

*Brown v. Federation of State Med. Bds. of the United States*, 830 F.2d 1429, 1435 (7th Cir.1987).

▮ Thus, the extensiveness of the inquiry required depends in part upon the time available for investigation, and courts are more lenient when attorneys are pressed for time, as when a client requests counsel to file a complaint shortly before the expiration of the limitations period. *See In re TCI Ltd.*, 769 F.2d 441, 446 (7th Cir.1985). In addition, more investigation is required when the facts are publicly available as opposed to when they are under the exclusive control of the potential opposing party. *See S.A. Auto Lube, Inc. v. Jiffy Lube Int'l, Inc.*, 842 F.2d 946, 949 (7th Cir.1988). Furthermore, an attorney should rely on a client's statements only when reasonable to do so; if possible, the attorney should attempt to corroborate such statements by interviewing available witnesses and reviewing accessible documents. *See, e.g., id.; Nassau–Suffolk Ice Cream, Inc. v. Integrated Resources, Inc.*, 114 F.R.D. 684, 689 (S.D.N.Y.1987) ("When the attorney can get the information neces-

sary to certify the validity of the claim in public fashion and need not rely on the client, he must do so.").

▮ In short, an attorney cannot file suit and then use pretrial discovery as the sole method of determining the merits of the case. *Szabo*, 823 F.2d at 1083. Nor can an attorney avoid the consequences of Rule 11 by voluntarily dismissing the suit, since the violation is complete when a complaint has been filed without reasonable investigation. *Id.* at 1079. A voluntary dismissal serves only to mitigate the sanctions imposed. *Id.*

▮ In this case counsel for the plaintiff did not conduct a reasonable prefiling inquiry and, in fact, conducted almost no independent investigation at all, choosing instead to rely on a limited telephone call placed by an unnamed Autotech distributor, allegedly to an Enprotech employee,[8] and on the employee's handwritten note in response. This reliance was objectively unreasonable. First, counsel for Autotech was unaware of the specific questions allegedly asked by the distributor and, therefore, was unable to determine the significance of Bowman's statement that Fluid–Scope and Grimstad were the two distributors in the Chicago area—specifically, counsel could not know what types of devices they allegedly distributed (BIC ABSOCODERs or other types of ABSOCODERs).[9] In addition, the letter itself is quite cursory; it provides no information on whether the two defendants infringed the '834 patent, whether they infringed it in Illinois, or whether they induced others to infringe it—all of which were alleged in the complaint. Contrary to Autotech's contentions, counsel was not entitled to draw contrary inferences from the letter's silence on these matters and instead had to conduct an affirmative inquiry.

---

**8.** As this court noted above, *see supra* note 5, it is unclear why the distributor contacted Enprotech when the potential customer told him that Fluid–Scope was attempting to sell the ABSOCODERs. Furthermore, although the distributor allegedly called Enprotech for the information, Bowman's affidavit indicates that he was not affiliated with Enprotech, but rather with NSD of America.

**9.** Significantly, Mr. Sharma states only that the potential customer told the distributor that Fluid–Scope was selling ABSOCODERs, not BIC ABSOCODERs.

Furthermore, the limited information furnished by Mr. Bowman invited verification. The letter provided Autotech with the names and phone numbers of the alleged infringers; a simple phone call would have revealed that neither defendant sold the infringing device. At the very least, counsel for Autotech should have telephoned Mr. Bowman to obtain more specific information on the types of devices sold by the defendants.

■ The fact that counsel for Autotech confused ABSOCODERs with BIC ABSO-CODERs (or did not know that there were various devices under the ABSOCODER product line) is no excuse. There is no indication that counsel was pressed for time or lacked an adequate opportunity to investigate independently the veracity of the allegations. Counsel had a duty to familiarize himself at least superficially with the technology—and not, as apparently was done, wait until discovery to "sort things out." *See* Janser Affidavit at ¶ 8.

■ Furthermore, counsel for Autotech compounded this Rule 11 violation by attempting to use this suit as a bargaining chip in the *Enprotech* suit. Counsel concedes that attorneys for the defendants repeatedly advised him that the defendants had no connection to the allegedly infringing device. But instead of dismissing the case immediately (or at least conducting a belated postfiling investigation to determine whether the defendants' representations were true), counsel for Autotech refused to respond to the Rule 11 discovery and kept Fluid–Scope and Grimstad in the case solely for tactical reasons: to extract concessions from NSD with respect to the other suit. In short, counsel chose not to rectify immediately the consequences of the inadequate prefiling inquiry and pursued the litigation for four more months in an effort to better its position in another lawsuit.

## III. CONCLUSION

■ The court concludes that counsel for Autotech did not conduct a reasonable prefiling inquiry and, therefore, is subject to Rule 11 sanctions. Moreover, the court notes that the defendants comported themselves reasonably throughout the course of the litigation by promptly and repeatedly informing the plaintiff of the inaccuracies in the complaint; they therefore fulfilled their duty to mitigate damages by attempting to resolve the dispute quickly and efficiently. *See Dubisky v. Owens,* 849 F.2d 1034, 1037 (7th Cir.1988). Accordingly, the court grants the defendants' motion for Rule 11 sanctions against Autotech's counsel who signed the complaint, William T. Rifkin. Counsel for the defendants are to file a detailed statement of attorneys' fees and cash disbursements by May 19, 1989. Counsel for the plaintiff must file his response, if any, by June 1, 1989. The court will rule by mail unless it determines that a hearing or oral argument will be an aid to the court. If so, the court *sua sponte* will notice in counsel for the parties prior to the entry of the order.