Herbert **JUDIN**, Plaintiff,

v.

The **UNITED STATES**, Defendant,

and

The **Hewlett–Packard Company**, Third–Party Defendant.

No. 573–89C.

United States Court of Federal Claims.

Dec. 8, 1995.

485

Judd L. Kessler, Washington, DC, for plaintiff. Edwin M. Baranowski, Columbus, OH, of counsel.

Chun–I Chiang, with whom were Asst. Atty. Gen. Frank W. Hunger and Vito J. DiPietro, Washington, DC, for defendant. John Fargo, of counsel.

George C. Summerfield, Washington, DC, for former third-party defendant Hewlett–Packard Co.

## OPINION

BRUGGINK, Judge.

This is an action for alleged patent infringement.[1] Pending before the court is a Motion for Sanctions under RCFC 11 brought by third-party defendant Hewlett–Packard Company ("HP") against plaintiff Herbert Judin and his current and previous counsel (hereinafter "sanction defendants"). In addition, the motion seeks attorney fees pursuant to 35 U.S.C. § 285 (1988). Also pending are plaintiff's Cross–Motion for Sanctions against HP, and HP's Motion to Strike Plaintiff's Cross–Motion. The motions raise the question of what inquiry must be made by counsel and the patent holder prior to filing suit for infringement, as well as when a motion for sanctions may be brought. The Government has not responded to, or joined in, any of the motions.

## BACKGROUND

Plaintiff filed the complaint in this matter on October 23, 1989, based on the alleged infringement of three of his patents. The complaint was signed by plaintiff's first attorney-of-record (hereinafter "signing attorney") and certified by plaintiff. The claims based on two of the patents were dropped from the amended complaint on June 8, 1990. The remaining claim concerned United States Patent No. 3,656,832 ("the '6,832 patent"), which pertains to a method of micro-optical imaging. Plaintiff alleged that the Government, through the use of bar code scanners purchased by the United States Postal Service, infringed the '6,832 patent.

---

1. An opinion entered on February 17, 1993, resulted in the dismissal of key elements of plaintiff's claim. *Judin v. United States*, 27 Fed.Cl. 759 (1993). Subsequent orders dismissed all third-party defendants. The remainder of the case was settled and judgment was entered on March 31, 1995, dismissing the complaint.

Sometime prior to the filing of the complaint, plaintiff observed certain bar code scanners in use at a branch of the Postal Service. He then attended a scanning industry exhibition and reviewed trade publications, technical specifications and commercial literature, some of which suggested that government agencies were purchasing bar code scanners. No pre-filing physical examination, beyond visual observation, was done. Plaintiff did not ask the Postal Service for a sample of the device or otherwise try to obtain one commercially and, therefore, no reverse engineering was performed.

Plaintiff presented his observations to the signing attorney. This attorney also viewed the accused devices from a distance at the Postal Service, but otherwise conducted no investigation of his own. Neither he nor plaintiff attempted to contact the Postal Service, or any manufacturer, in order to gain access to the accused devices or to ask questions about their operation.

During oral argument on the motions, the signing attorney explained that he relied completely on Mr. Judin with respect to the factual bases for an infringement claim, stating: "I had no reason to doubt the facts that were very strongly asserted by Judin, because of his experience, his credentials, and his time in the industry." Tr. p. 40. Continuing, he stated, "Judin believed and strongly advocated that the fiber optics source was interchangeable with other sources of light." Tr. p. 41. Insofar as his role as legal counselor, the signing attorney merely stated that he and Mr. Judin "examined" the claim, and he (the signing attorney) "just saw no problem with it." *Id.* Suit was filed on October 23, 1989.

On February 28, 1990, the signing attorney provided a list of infringing products and their manufacturers to the Government, presumably based on input from the plaintiff, and solicited procurement records for those products. The Government filed, on April 18, 1990, a Motion to Notice Third Parties Under [RCFC] 14(a)(1). The motion stated:

The above listed corporations are the manufacturers and/or sellers on plaintiff's list that have been identified, in so far as defendant is presently able to ascertain, as manufacturers and/or suppliers of bar code reading devices which have been procured by the United States.

Def.'s Mot. to Notice Third–Parties Under [RCFC] 14(a)(1) at 3. HP voluntarily appeared in July, 1990, in response to the Government's motion. A number of the other third-party defendants appeared as well.

In the summer of 1991, plaintiff consulted with . George Wolken, Jr., Ph.D., J.D., an expert, who conducted an analysis of the patent involved and the contentions of infringement.[2] This analysis was conducted using information gleaned from commercial literature, the file wrapper of the patent, and plaintiff's pre-filing inquiry. Pursuant to this court's order of July 23, 1991, plaintiff filed an Interim Infringement Analysis based in part on Dr. Wolken's findings on August 27, 1991. Plaintiff also submitted a Final Claims Chart on December 24, 1991, keyed specifically to representative products and the specified elements of the patent claims.

On November 20, 1991, the court allowed plaintiff's motion to substitute counsel. Thereafter, plaintiff has been represented by counsel of record, and another attorney, of counsel (hereinafter "current counsel").

On June 30, 1992, a Joint Motion for Partial Summary Judgment on the Issue of Non–Infringement was filed by the Government and HP. Before the court ruled on the first dispositive motion, HP filed another motion for partial summary judgment directed to the issue of invalidity. On February 17, 1993, the court granted, in part, the first dispositive motion with respect to optical communications transmitters and wands. *Judin v. United States*, 27 Fed.Cl. 759, 791 (1993). The court held that, with respect to wands with ball tips and optical communications transmitters, there was no infringement of plaintiff's patent. The court also held that a genuine issue of material fact still existed as to whether optical communications receivers infringed.

Pursuant to the court's order of April 2, 1993, plaintiff later stipulated that the Gov-

---

**2.** Dr. Wolken is a physicist who is also an attorney and member of the patent bar.

ernment had never purchased any of the receivers from HP. On April 15, 1993, the court ordered HP's dismissal from the action and ruled that HP's December 28 motion for partial summary judgment was moot. Judgment was entered on May 12, 1993, to that effect.

On July 14, 1993, HP moved for sanctions against plaintiff and plaintiff's attorneys, both the signing attorney and current counsel, seeking its reasonable expenses incurred in the litigation. That motion was stayed by order of July 20, 1993, pending resolution of the remaining issues between the plaintiff and the Government. On April 15, 1994, at the request of the remaining parties, the court suspended this case pending settlement negotiations.

HP's motion of May 20, 1994, to renew its Motion for Sanctions was denied by the court on July 18, 1994. On February 16, 1995, HP petitioned the Court of Appeals for the Federal Circuit for a writ of mandamus to direct this court to rule on HP's Motion for Sanctions. The petition was denied on February 28, 1995. On March 27, 1995, after extended settlement negotiations between the Government and plaintiff, a Joint Stipulation of Dismissal with prejudice was filed for the remaining claims and subsequently entered by the Clerk. On March 31, 1995, the court dismissed the complaint and reactivated HP's Motion for Sanctions.

On June 6, 1995, plaintiff filed a Cross–Motion for an Award of Sanctions Against Third–Party Defendant Hewlett–Packard which also contained its response to HP's Motion for Sanctions. HP subsequently filed a Motion to Strike Plaintiff's Cross–Motion for Sanctions Against HP on June 8, 1995. Oral argument was held on all three pending motions on August 24, 1995.

HP argues that plaintiff and his counsel failed to meet the standard set by RCFC 11. It contends that a reasonable pre-filing inquiry would have revealed that HP's products either did not infringe the '6,832 patent or that the Court of Federal Claims did not have jurisdiction because HP did not sell to the Government. It argues, in the alternative, that plaintiff and the signing attorney negligently filed and maintained this action based on an invalid and unenforceable patent and are thus responsible for fees and costs under both RCFC 11 and section 285 of title 35.[3] HP further contends that the '6,832 patent is unenforceable because it was obtained as a result of inequitable conduct in violation of 35 U.S.C. § 102(b), which requires disclosure to the examiner of any information relevant to patentability.[4]

In response, the sanction defendants argue that HP's motion is untimely because it was brought after HP had been dismissed from the suit and outside of the time period suggested by RCFC 81(e), pertaining to application for attorney's fees. They contend that HP lacks standing to file a motion for sanctions after being dismissed. The sanction defendants also argue that their pre-filing inquiry is in accord with the RCFC 11 standard and that no exceptional circumstances exist which would permit an award of attorney's fees under section 285. They further contend that the invalidity issue was declared moot by the court and is thus precluded from reconsideration.

## DISCUSSION

*Preliminary Matters*

1. Discovery; the Patent Validity Question

Before examining the merits of HP's motion, the court will address some preliminary matters. The first concerns limitations the court placed on HP's right to discovery in support of its motion for sanctions, and second, limitations on the grounds that the court would consider as a basis for sanctions. The matters are intertwined.

---

3. Section 285 permits the court, "in exceptional ·cases" to award reasonable attorney fees to the prevailing party in patent infringement cases. 35 U.S.C. § 285 (1988).

4. Section 102(b) prohibits the issuance of a patent if "the invention was ... in public use ... more than one year prior to the date of the application for patent...." 35 U.S.C. § 102(b) (1988). HP specifically contends that the subject of the patent was in such public use.

One of HP's contentions is that sanctions are appropriate under both RCFC 11 and section 285 because plaintiff brought an infringement action when he knew, or should have known, that his patent was invalid. That is one of the exceptional circumstances upon which the court can, at its discretion, award attorney's fees under section 285. *See Eltech Sys. Corp. v. PPG Indus., Inc.,* 903 F.2d 805, 811 (Fed.Cir. 1990); *Hughes v. Novi American, Inc.,* 724 F.2d 122, 124–25 (Fed.Cir.1984); *Arbrook, Inc. v. American Hosp. Supply Corp.,* 645 F.2d 273, 279 (5th Cir.1981). The court has already announced, however, that it would not consider arguments in support of HP's motion which challenged the validity of the '6,832 patent. Accordingly, discovery to support that basis for sanctions would have been denied. The court iterates that ruling here.

In the underlying action, it was unnecessary to resolve the issue of validity in order to rule on most of Judin's complaint. It was enough to find that there was no infringement. The motion for summary judgment based on non-validity was brought at a later time and deemed to be moot. While sanctions are a legitimate litigation tool, they run the risk of overwhelming the underlying action. If the court permitted the issue of validity to have been litigated purely for the purpose of resolving the sanctions motion, the result clearly would have been to allow "the tail to wag the dog." Rule 11 sanctions, as well as an award of costs and fees under section 285, are premised, in part, on the desire to minimize fruitless litigation. Nothing would have been more fruitless than to keep this lawsuit alive on a difficult substantive matter, generating substantially more attorney fees, just for purpose of deciding if the prior litigation was a waste of time.

Another discovery issue arose in connection with statements made by Judin's present and former counsel at oral argument describing their actions before and after filing the complaint. It is not clear whether counsel for HP waived any right to respond to those statements or to further discovery regarding the asserted conduct during oral argument. The court would not, in any event, have permitted further discovery. First, those assertions were not substantially different from the representations made to the court in affidavits. Second, to the extent plaintiff's counsels' representations were relevant, they consisted of statements that HP would not be able to challenge easily. They relate to what the attorneys said, saw or heard. Absent a withdrawal of the representations by counsel, depositions likely would have been no more than an extension of oral argument concerning what is adequate inquiry. Discovery from attorneys is always problematic under the best circumstances. The court concludes that the likelihood of HP gathering information useful to the court in this closed action is minimal in contrast to the certainty that the litigation would be extended at cost to the court and the parties.

2. Timeliness of HP's Motion for Sanctions

Plaintiff argues that HP's motion for sanctions was untimely because it was filed after HP was dismissed from the case. This court anticipated the issue of timeliness in its opinion of July 18, 1994, in which it deferred consideration of HP's motion for sanctions pending resolution of the case-in-chief, stating:

> Nor is the motion for sanctions untimely in view of HP's prior dismissal. The Court in *Cooter & Gell* declined to set a fixed time within which motions for sanctions must be brought, but clearly suggested that it would not be untimely to file a Rule 11 challenge to the complaint before the end of litigation.

*Judin v. United States,* 31 Fed.Cl. 582, 584 (1994) (citing *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)). At the time of HP's filing, the case in chief had not yet been dismissed.

The court's further consideration of the issue indicates no new evidence or change in controlling law, clear error or potential manifest injustice, to warrant the court's reconsideration of its ruling. *White v. Murtha,* 377 F.2d 428, 431–32, *reh'g denied,* 381 F.2d 34 (5th Cir.1967). While the result might be different under the 1993 amendments to the

Federal Rules of Civil Procedure,[5] under the prior wording, applicable here, no fixed time limit is recognized for bringing motions for sanctions. *See, e.g., Community Elec. Serv. of Los Angeles, Inc. v. National Elec. Contractors Ass'n, Inc.,* 869 F.2d 1235, 1242 (9th Cir.) (motion brought 30 days after judgment is timely), *cert. denied,* 493 U.S. 891, 110 S.Ct. 236, 107 L.Ed.2d 187 (1989); *Lind–Waldock & Co. v. Caan,* 121 F.R.D. 337, 338–39 (N.D.Ill.1988) (motion brought 90 days after judgment is timely); *cf. Price v. State of Hawaii,* 789 F.Supp. 330, 336 (D.Haw. 1992) (motion brought more than two years after judgment is untimely). *But see Mellon Bank Corp. v. First Union Real Estate Equity and Mortgage Investments,* 951 F.2d 1399, 1413 (3d Cir.1991) (motion must be filed before entry of final judgment). Therefore, HP's motion is timely.

*HP's Motion for Sanctions*

■ HP alleges that the first violation of Rule 11 occurred when the complaint was filed. While HP was not made a party by the complaint itself, the court holds that it has standing to question plaintiff's initial filing. While the Government moved to bring in HP and the other third parties, that step would have been unnecessary if the complaint had not forced the Government to exercise its rights to indemnification. The Government was confronted with an allegation of patent infringement that, on the surface, would seem plausible. Moreover, the list of accused products came from the plaintiff. The Government's choice of which parties to notify was directed only to determining from which companies it had purchased. The court holds that the Government had no independent obligation under the circumstances to investigate further before bringing in HP.

■ Rule 11[6] requires only an inquiry which is "reasonable under the circumstances, and the circumstances vary from case to case." *Vista Mfg., Inc. v. Trac–4, Inc.,* 131 F.R.D. 134, 139 (N.D.Ind.1990) (citing *Matter of Yagman,* 796 F.2d 1165, 1182 (9th Cir.1986), *cert. denied,* 484 U.S. 963, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987)). Reasonableness depends on factors such as the amount of time for investigation, the need to rely on a client for the factual foundation, the complexity of the facts, and the ability of the attorney to conduct a pre-filing investigation. *Vista Mfg.,* 131 F.R.D. at 138 (quoting *Brown v. Federation of State Med. Bds. of the United States,* 830 F.2d 1429, 1435 (7th Cir.1987)); *Autotech Corp. v. NSD Corp.,* 125 F.R.D. 464, 470 (N.D.Ill.1989) (quoting *Brown,* 830 F.2d at 1435); *see, e.g., Accent Designs, Inc. v. Jan Jewelry Designs, Inc.,*

---

**5.** Some of the changes are explained *infra* at note 6. One of the new requirements is that the party bringing a motion for sanctions must have given the accused party an opportunity to withdraw the offending document. *See* Fed.R.Civ. Proc. 11(c)(1)(A). This may have the practical effect of preventing post-dismissal motions for sanctions.

**6.** RCFC 11 is patterned after Rule 11 of the Federal Rules of Civil Procedure. However, while the latter Rule was changed in 1993 to make the imposition of sanctions discretionary, RCFC 11 has not been similarly amended. RCFC 11 assigns an affirmative duty to attorneys and parties to understand and support any papers signed by themselves or their representatives:

> The signature of an attorney or party constitutes a certificate by the attorney or party that the attorney or party has read the pleading, motion, or other paper; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

RCFC 11. The central purpose of the rule is to deter baseless filings in court and streamline the administration and procedure of the federal courts. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1989). Rule 11 sanctions are warranted only when "it appears that a pleading has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law...." *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985). Thus, the rule creates an objective standard. The imposition of sanctions under the rule is mandatory where a party's or attorney's conduct falls below the requisite standard. *Refac Int'l, Ltd. v. Hitachi Ltd.,* 921 F.2d 1247, 1257 (Fed. Cir.1990); *United States v. International Bhd. of Teamsters,* 948 F.2d 1338, 1344 (2d Cir.1991).

827 F.Supp. 957, 974 (1993) (motions filed were sufficient due to urgency), *reh'g denied,* 1994 WL 121673 (S.D.N.Y.1994). As the Seventh Circuit stated:

> It is not permissible to file suit and use discovery as the sole means of finding out whether you have a case.... Rule 11 requires independent inquiry. The amount of investigation required by Rule 11 depends on both the time available to investigate and on the probability that more investigation will turn up important evidence....

*Szabo Food Serv., Inc. v. Canteen Corp.,* 823 F.2d 1073, 1083 (7th Cir.1987) (citations omitted), *cert. dismissed,* 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988).

 In patent infringement cases, the fact that the plaintiff does or does not undertake reverse engineering is plainly relevant. *See Cambridge Prod., Ltd. v. Penn Nutrients, Inc.,* 962 F.2d 1048, 1050 (Fed.Cir. 1992) (citing plaintiff's testing of sample of infringing product as support for district court's denial of defendant's motion for fees under Rule 11 and section 285); *Refac Int'l, Ltd. v. Hitachi Ltd.,* 141 F.R.D. 281, 286 (C.D.Cal.1991) (magistrate judge citing "total lack of reverse engineering" as partial basis for ruling that inquiry was not reasonable). However, consideration of documentary evidence has been held sufficient to meet the pre-filing inquiry requirement. *Vista Mfg.,* 131 F.R.D. at 139. In *Vista Mfg.,* plaintiff had evidence suggesting the defendant was marketing or preparing to market an infringing product. The court found that the damage to the plaintiff had already begun and would continue to mount unless an action was brought to help mitigate the losses in market share. *Id.* The court concluded that the absence of pre-filing reverse engineering was not conclusive on the question of whether an adequate inquiry was undertaken. *Id.* at 140. We agree that the absence of a detailed pre-filing examination of a product is not conclusive of a violation, however, such an examination would obviously go a long way toward dispelling a claim that the suit was ill-considered.

What information did the plaintiff and his attorney have before filing the complaint here? We begin with the fact that Mr. Judin is obviously very knowledgeable about the field of optical scanners and kept informed of the latest product developments. That intimate knowledge makes it more likely that Judin could look at the wands used at the Postal Service, or at devices described in literature, and draw informed conclusions. This also makes the signing attorney's deference to Mr. Judin understandable with respect to the physics of light scanners and the mechanics of the accused devices. After viewing the hand-held wands in use at the Postal Service, they knew that there was a light source within the apparatus, that at the tip there was a rounded piece of glass or plastic through which the light passed, and they observed that the light was in a pinpoint, either due to the focusing effect of the tip or something inside, or because the light originated in a pinpoint.

Judin provided material, which presumably had been part of his pre-filing investigation, as part of his response to HP's motion for sanctions. After reviewing this material, the court does not believe this could have provided plaintiff, or his counsel, with much useful information. Although it suggested that many government agencies were using bar code technology, the devices were not described in detail. Moreover, it appears that several of the described devices made use of light emitting diodes ("LED") as the light source, rather than a fiber optical source, as called for in the patent. Only one document suggests the possibility that the tip of the wand acts to focus light.[7]

What did the plaintiff and the signing attorney not know? Without repeating the prior claims analysis, *see Judin,* 27 Fed.Cl. at 783–91, the court notes that, at a minimum, they would not have known whether there was a fiber optic source, literally or by equivalents, or whether the lens was aspherical

---

7. Plaintiff's counsel cited one example from the literature, a brochure from Intermec, a manufacturer of bar code scanners, that described its product in part as follows: "The ruby tip acts as a lens to focus a photo detector to a spot on the label surface. The low power, long life LED light source above the ruby ball irradiates the label."

and converging. In short, the very things that Mr. Judin should have known were controversial, in view of his difficulty obtaining the patent, were what was unknown. These two claim elements were found, by the court, not to be present, either literally or by the doctrine of equivalents, in the wands and transmitters. *Id.*

Plaintiff could have been much better informed. Judin or the signing attorney could have asked the Postal Service for a device to take apart. In his defense, plaintiff asserts, with no real support, that the subject scanners are made to government specifications and are in use at government installations and thus, are not readily accessible for disassembly. This explanation for not obtaining, or even attempting to obtain, a sample, either from the Postal Service or a vendor, is lame. Plaintiff made no effort to contact the Postal Service in order to confirm or deny such an assumption, to ask for information about the devices, nor to seek the names of vendors so that he could purchase a machine directly from a vendor. Even if plaintiff had to purchase a machine, the price would have been minuscule compared to the amount spent on this litigation. In addition, the documentary material available to Judin, for aught that appears in this record, consisted of generalized descriptions of devices commercially available. In sum, the court is greatly troubled by the quality of the plaintiff's pre-filing examination, as well as the signing attorney's undue deference to Mr. Judin. Clearly, more could have been done. Moreover, although the court denied the motion for summary judgment with respect to receivers, the inquiry as to those devices was no less desultory. The test with respect to the initial filing relates to the reasonableness of the inquiry, not whether the plaintiff got lucky.

Under the present circumstances, however, to hold that sanctions are appropriate would require the court to find that knowledge of how the wands, or other devices for that matter, were constructed would have made a difference to Mr. Judin. The court is persuaded that it would not. Mr. Judin, and his counsel, labored throughout under the same erroneous assumption of the breadth of the claims in his patent. This view was strengthened in mid–1991 by Dr. Wolken, who advised plaintiff that a point source of light could reasonably be found to be the substantial equivalent of a fiber optic source of light and that a substantially spherical ball could be the equivalent of an aspherical lens. Although foolishly clinging to a misconception would be no defense, here, that misconception was translated into a colorable, albeit unsuccessful, response to a motion for summary judgment. While the court found that there was a clear lack of literal infringement on a number of elements of the patent, it gave sufficient credence to plaintiff's alternative arguments with respect to possible infringement through the doctrine of equivalents to undertake a lengthy examination on summary judgment. The court is not prepared to say that the arguments it rejected on summary judgment were uniformly frivolous. Accordingly, a more thoughtful pre-filing examination would not, in all likelihood, have deterred Judin's interest in the lawsuit. From observation and the trade materials plaintiff knew enough to make his ultimate argument. Even though the pre-filing examination was minimal, it is no more sanctionable than the subsequent maintenance of the suit. While the sanction defendants' enthusiasm for the suit is remarkable, it is not sanctionable.

The reasonableness of Mr. Judin's actions are, of course, in part demonstrated by his consultation of patent counsel. The signing attorney is obligated to bring his legal expertise to bear on the facts presented. Claim construction is a question of law. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 970 (Fed.Cir.), *cert. granted,* —— U.S. ——, 116 S.Ct. 40, 132 L.E.2d. 921 (1995). As a result, the signing attorney had a duty to analyze the patent claims and determine whether plaintiff's assertions were plausible. While the signing attorney could defer to Mr. Judin's expertise in some areas, he still had the obligation of satisfying himself that a proper construction of the claims, in light of the facts brought to him by the client, permits argument that each element of the patent appears in the accused device. The court has very little to go on in this regard, but during oral argument, the sign-

ing attorney stated that he examined the claims and found them to be colorable. This is minimally sufficient to preclude sanctions.

Neither of the two other attorneys that represented the plaintiff signed either the original or amended complaints. Rule 11 creates obligations with respect to other filings as well, however. While the thrust of HP's argument was directed at the complaint, as amended, it extended to plaintiff's filings in connection with the motion for summary judgment. Having declined to order sanctions in connection with the initial filings, it would be inconsistent for the court to order sanctions in connection with the motion briefing. Before the bulk of the expenses prompted by this action were incurred, plaintiff had consulted George Wolken, a physicist with a law degree. Dr. Wolken has expertise in optical physics and light diffraction. He advised plaintiff that his patent arguably covered the wands and transmitters. In retrospect this was bad counsel, but it gives some color to the validity of proceeding with the suit.[8]

Although not pressed at oral argument, HP's motion also makes the point that Judin demonstrated sanctionable conduct when he failed to drop HP as a party upon the third-party's demonstration that it had not sold any receivers to the Government. This could only have occurred after the court's ruling on the initial dispositive motion, however. Apparently HP did sell wands and transmitters to the Government. The record does not permit a finding that Judin delayed unduly in agreeing to dismiss HP after the lawsuit was limited to receivers.

■ From what has been said, it follows that fees should not be shifted under section 285. As HP candidly admits, the "exceptional cases" contemplated by the statute are limited. The relevant ground relied on by HP, and recognized by the Federal Circuit, is the bad faith prosecution of litigation by the patent holder. *See Rohm & Haas Co. v.*

*Crystal Chem. Co.,* 736 F.2d 688, 691–92 (Fed.Cir.1984). The Federal Circuit has inferred bad faith when a patent holder pursues an infringement action recklessly or with wrongful intent or when he knew or should have known the patent was invalid. *See Eltech Sys. Corp. v. PPG Indus., Inc.,* 903 F.2d 805, 811 (Fed.Cir.1990); *Hughes v. Novi American, Inc.,* 724 F.2d 122, 124–25 (Fed.Cir.1984). The standard under this section is more difficult to meet, under the present set of facts, than it would be under Rule 11. Moreover, for the reasons already outlined, the court will not address for the first time the substantive question of validity in the context of a motion for sanctions. Therefore, attorney fees are not warranted under section 285.

### Judin's Motion for Sanctions

Plaintiff's cross motion for sanctions is directed to HP's supposed violation of Rule 11. Plaintiff asserts five violations. They will be dealt with individually. First, plaintiff states:

H–P's fact arguments about inquiry and device inspection are contradicted by documents emanating from it own counsel. H–P failed to provide information on sales to respond to a specific request. Its present complaints are matters of its own doing.

The first sentence is, at best, argument responsive to HP's motion. The second sentence might, earlier, have been the proper subject of a motion to compel, but it is not grounds for sanctions, even if true. The last sentence is fluff.

■ The next point is that,

On litigated issues, H–P clearly engaged in disproportionate effort, far exceeding the effort expended by any other party. For H–P to have served at least 162 separate discovery requests in addition to depositions, in [a] case it now calls unsupported shows no sense of proportion whatever.

---

8. The court disagrees with HP's assertion that Judin's agreement to dismiss voluntarily third party defendant, Hand Held Products, demonstrates that continued pursuit of the action was undertaken in bad faith. The signing attorney agreed to the dismissal when he was persuaded by Hand Held's attorney that the file wrapper history estopped plaintiff from arguing that a fiber optic source was not literally required. After Dr. Wolken got involved, his advice persuaded plaintiff and his counsel that there was room to argue the presence of a fiber optic source through equivalents.

The court notes that these "separate" requests consist primarily of 112 interrogatories and 44 requests for admission. Considering the potential liability from a finding in plaintiff's favor, the scope of HP's discovery is not surprising. If plaintiff thought that discovery was inappropriate, it had a potential remedy in RCFC 26(c). Nothing in the brief suggests support for the proposition that "lack of proportion" in discovery is grounds for sanctions. Within the rules, a defendant can undertake whatever discovery it wishes and can afford. HP was not required to limit itself to plaintiff's level of effort.

The third point is that "H–P pressed unilateral discovery on moot issues in which no other party joined, disregarding the urging and Orders of this Court regulating the conduct of the action." No details are offered for the assertion that HP pressed discovery against the expressed wishes of the court, and the court is aware of no support for it. The fact that HP by itself sought discovery is irrelevant.

The fourth point is that HP filed unsuccessful motions before this court, and the Federal Circuit, challenging what has been determined to be proper procedure by this court. Presumably the plaintiff is referring to HP's effort to reopen its Motion for Sanctions after this court had stayed the matter pending outcome of the settlement negotiations between the parties in chief. HP's concern about its rights in view of the pending settlement was understandable, as was its effort to preserve its right by attempting to obtain an extraordinary writ from the Federal Circuit. Lack of success does not mean those steps were taken in violation of Rule 11, and plaintiff's suggestion that they were is patently devoid of explanation or support. The court notes, moreover, that it is plaintiff that has resurrected the question of the timeliness of HP's request for sanctions, something that the court has previously ruled on, as explained above.

Finally, plaintiff contends that HP neglected to "appeal or otherwise timely move to preserve its standing." Plaintiff does not explain what HP was supposed to appeal from, considering that it was completely successful in defeating Judin's claim. Moreover, it did "otherwise timely move to preserve its standing," although this court and the Federal Circuit thought it unnecessary for HP to do so, by seeking a writ of mandamus from the Federal Circuit.

Plaintiff's motion for sanctions was not pressed at oral argument. In short, it is totally groundless. Under RCFC 11, the court must impose sanctions on parties or counsel if it finds that a pleading was not well-grounded in fact or was interposed for an improper purpose. The court finds that Judin's Cross–Motion for Sanctions was not well-grounded in fact, that Judin and his current counsel knew or must have known that it was not well grounded in fact, and that the motion was filed solely as a litigation tactic and, therefore, had the effect of unnecessarily confusing consideration of the real issues. The version of Rule 11 enforced in this court requires the imposition of sanctions upon making such a finding, even *sua sponte*. While the motion took up very little effort, it was so frivolous that the court is persuaded it has no choice but to order the plaintiff to pay HP for its cost in defending it.[9] The court believes that a reasonable sanction against plaintiff and current counsel of record is for them to pay for HP's responsive filing of June 8, 1995. The court finds that a reasonable amount is $500.

## CONCLUSION

While the plaintiff's and signing attorney's inquiry into the facts surrounding the complaint, as amended, can hardly be characterized as exhaustive, the court finds that it minimally met the requirements of Rule 11. Nor was there a violation with respect to filings after the complaint. The court also declines to award costs or fees under section

9. The court would have made the same determination under the standards established in the 1993 changes to Rule 11. *See* R.Fed.Civ.Proc. 11(b)(1) & (3). The procedural requirements added by the 1993 amendments, *see* R.Fed.Civ. Proc. 11(c)(2)(B), would not be applicable here, but the court notes that the facts underlying the ordering of sanctions are drawn from the same circumstances as those supporting HP's motion for sanctions.

285. Accordingly, third-party defendant HP's Motion for Sanctions is denied. Plaintiff's Cross–Motion for Sanctions is denied. HP's Motion to Strike is granted. For the reasons set out above, the court also, *sua sponte*, orders plaintiff and current counsel of record to pay HP a total of $500 for violating Rule 11 in connection with the Cross–Motion for Sanctions.